STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, RELATOR, V.
STANFORD L. SIPPLE, RESPONDENT.
660 N.W.2d 502

Filed May 9, 2003.   No. S-02-460.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## I. NATURE OF CASE

This is an action brought by the Counsel for Discipline of the Nebraska Supreme Court seeking the imposition of discipline against respondent, Stanford L. Sipple, a member of the Nebraska State Bar Association. Respondent was formally charged with violating certain disciplinary rules and his oath of office as an attorney in connection with his representation of Brian Husted. A hearing was held, and the referee found that respondent had violated the Code of Professional Responsibility. The referee made no finding as to whether respondent had violated his oath as an attorney. See Neb. Rev. Stat. § 7-104 (Reissue 1997). The referee recommended that respondent be suspended from the practice of law for 1 year. Respondent filed exceptions to the referee's report. Following our de novo review of the record, we agree with the referee's findings of fact and conclusions of law. We also conclude respondent violated his oath of office as an attorney. We reject the referee's recommended 1-year suspension and instead suspend respondent from the practice of law for 2 years.

## II. STATEMENT OF FACTS

The substance of the referee's findings, with which we agree, may be summarized as follows: On November 14, 1998, respondent entered into a fee agreement to represent Brian in a workers' compensation claim against Duncan Aviation. Brian had allegedly sustained a serious head injury arising out of and in the course of his employment. Respondent filed a workers' compensation lawsuit on behalf of Brian against Duncan Aviation, and the matter was scheduled to go to trial on March 2, 2001. Immediately prior to trial, the parties engaged in settlement discussions. The referee found that during these negotiations, respondent "failed, despite the request of [Brian], to put a settlement demand of $185,000.00 or $165,000.00 to the [employer's] attorney." Apparently, the parties arrived at the figure of $150,000 to resolve the case. Cheryl Husted, Brian's wife, claims, however, that immediately after reaching this figure, she and Brian advised respondent that they did not want to settle the case for $150,000. Cheryl claims respondent advised her that there was nothing that could be done. The referee concluded that

the Husteds "felt that they were pressured to accept the $150,000.00 settlement."

On March 15, 2001, Brian was given a copy of the settlement documents by respondent's office. On March 16, Cheryl advised respondent that Brian needed more time to review the paperwork. In his report, the referee stated that Cheryl's request for more time "incensed [respondent, who] insisted that the settlement documents be executed by the Husteds and returned to his office later [that same day] or he would take steps to nullify the settlement." The referee found that on March 16, respondent left a telephone message for Brian, stating, " 'I'll give you this one last chance. You be in here on Monday [March 19, 2001] before twelve noon and ready to sign these documents or I will go to [Duncan Aviation's attorney.] This is your last chance.' "

Also on March 16, 2001, respondent advised Cheryl that he was driving to the Husteds' house to speak with Brian directly, despite Cheryl's request that respondent not do so because Brian was ill. Later that same day, respondent drove to the Husteds' home and confronted Brian about the settlement documents. The referee's report stated that during their conversation, respondent "became abusive," inquiring whether Brian needed a guardian and challenging Brian to settle the case " 'like a man.' " The referee reported that "[a]ll of this, to say the least, was upsetting to the Husteds."

On March 19, 2001, the Husteds terminated their employment of respondent and hired a new attorney to handle Brian's workers' compensation claim. Thereafter, respondent took several actions which the referee determined could "only be described as a campaign to intimidate the Husteds and force an early payment of his [attorney] fee," even though there was no dispute about respondent's right to collect a fee. Despite the ongoing nature of Brian's workers' compensation claim, respondent scheduled the depositions of the Husteds. He also served them with requests for admissions. Additionally, on May 2, and again on May 17, respondent contacted Duncan Aviation's workers' compensation lawyer. The record reflects that in one conversation, respondent stated to Duncan Aviation's lawyer that "he did not want [Brian] to receive any more than $150,000 in settlement." Respondent also contacted by e-mail the workers' compensation judge assigned to

Brian's case. According to the referee's report, in the e-mail, respondent stated to the judge that he saw " 'little harm that could be done to [Brian's] case by answering [respondent's] discovery [regarding attorney fees], other than his avoiding the truth.' "

In his report, the referee observed that respondent "took offense at a certain Response to [respondent's] Requests For Admissions supplied by [Brian] and his [new] lawyer." As a result of this "offense," respondent threatened to prosecute Brian for perjury. The record reflects that in a facsimile transmitted to the Husteds' new attorney, respondent wrote "I will pursue perjury because it is perjury. . . . Make truthful statements or I will take matter further."

On August 24, 2001, the Husteds' new attorney settled Brian's workers' compensation claim against Duncan Aviation for $200,000. On October 15, this new attorney filed a grievance with the Counsel for Discipline's office against respondent relating to respondent's actions involving the Husteds. On April 30, 2002, a single-count formal charge was filed against respondent alleging that as a result of his actions, respondent had violated the following disciplinary rules:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(5) Engage in conduct that is prejudicial to the administration of justice. . . .

(6) Engage in any other conduct that adversely reflects on his or her fitness to practice law.

DR 7-101 Representing a Client Zealously.

(A) A lawyer shall not intentionally:

. . . .

(3) Prejudice or damage his or her client during the course of the professional relationship . . . .

DR 7-105 Threatening Criminal Prosecution.

(A) A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter.

On June 7, respondent filed an answer to the formal charges, admitting certain of the allegations, but denying that he had

violated either the disciplinary rules or his oath as an attorney. On June 12, this court appointed a referee to serve in the case. A referee hearing was held on October 4, at which hearing evidence was adduced regarding the facts recited above and argument was presented. The record also discloses that respondent had been the subject of two prior reprimands.

On November 8, 2002, the referee filed his report and found by clear and convincing evidence that respondent had violated Canon 1, DR 1-102(A)(1), (5), and (6), and Canon 7, DR 7-101(A)(3) and DR 7-105(A). In his report, the referee also noted that respondent had been the subject of a prior disciplinary proceeding "for behavior of the same type." In one of the two prior disciplinary proceedings, respondent had received a private reprimand after leaving verbally abusive messages on his clients' answering machines when the clients indicated some concern with regard to a settlement respondent had negotiated. With respect to the sanction which ought to be imposed for the violations established by the record, and considering respondent's prior disciplinary history, the referee recommended that respondent be suspended from the practice of law in the State of Nebraska for 1 year. On November 18, respondent filed exceptions to the referee's report.

### III. ASSIGNMENTS OF ERROR

In his brief, respondent assigns five errors, which we restate as four. Respondent claims, restated, that (1) the evidence was insufficient as a matter of fact and law to support the conclusion that he violated DR 1-102(A)(5) and (6); (2) the evidence was insufficient as a matter of fact and law to support the conclusion that he violated DR 7-101(A), in part because certain statements respondent made were protected speech, privileged under the First Amendment to the U.S. Constitution and article I, § 5, of the Nebraska Constitution; (3) the evidence was insufficient as a matter of fact and law to support the conclusion that he violated DR 7-105(A); and (4) the punishment was excessive.

### IV. STANDARD OF REVIEW

■ A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a

material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. NSBA v. Gallner*, 263 Neb. 135, 638 N.W.2d 819 (2002). To sustain a charge in a disciplinary proceeding against an attorney, a charge must be established by clear and convincing evidence. *State ex rel. Counsel for Dis. v. Petersen*, 264 Neb. 790, 652 N.W.2d 91 (2002); *State ex rel. Counsel for Dis. v. Brinker*, 264 Neb. 478, 648 N.W.2d 302 (2002).

## V. ANALYSIS

### 1. Violation of Disciplinary Rules and Attorney's Oath

#### (a) DR 1-102(A)(5) and (6)

For his first assignment of error, respondent challenges the referee's conclusion that respondent violated DR 1-102(A)(5) and (6). In his brief, respondent admits that his "final efforts to consummate the settlement and resolve the fee dispute [were] probably 'out of bounds.'" Brief for respondent at 7. Nonetheless, respondent argues that such conduct does not amount to "conduct that is prejudicial to the administration of justice," see DR 1-102(A)(5), or "conduct that adversely reflects on [respondent's] fitness to practice law," see DR 1-102(A)(6). We disagree.

Initially, we note that respondent's prior disciplinary proceeding involving his leaving abusive messages on his clients' answering machines resulted in respondent's receiving a private reprimand for violating DR 1-102(A)(1), (5), and (6); the same rules respondent claims he did not violate in the instant case. We also note the similarity between respondent's conduct in his prior disciplinary proceeding and certain of the actions in which respondent engaged in the instant case.

Based on our de novo review of the record, it is clear that the record in the instant case contains overwhelming evidence that respondent was abusive to a client in an attempt to coerce the client into accepting a settlement which the client was not prepared to accept and in an attempt to collect an attorney fee. The record reflects that respondent left a threatening message on the Husteds' answering machine. The record also demonstrates that despite Cheryl's request that Brian be given more time to review the settlement documents, respondent stated that he would

"nullify" the settlement if Brian did not execute the documents immediately. The referee found that respondent confronted Brian at his home, notwithstanding Cheryl's specific request that respondent not come to the house because Brian was too ill. During the confrontation which ensued, the record reflects that respondent verbally abused his own client who had sustained a severe head injury, threatened Brian that he needed a guardian, and challenged Brian to settle the case " 'like a man.' "

Respondent continued his abusive behavior, aggressively pursuing his claim to a legal fee that was not in dispute, at a time when Brian's workers' compensation case had not concluded. The referee found respondent's actions to be a "campaign to intimidate the Husteds." During this "campaign," the record reflects that respondent contacted Duncan Aviation's attorney, stating that "he did not want [Brian] to receive any more than $150,000 in settlement." Respondent also contacted the judge assigned to hear Brian's workers' compensation case by e-mail and in that message, challenged Brian's willingness to tell the truth. The referee found that respondent threatened to prosecute Brian for perjury for a matter which respondent admitted had no bearing on his claim for an attorney fee.

We have previously stated that an attorney is expected to use legal means to enforce his or her rights, not violent threats. See *State ex rel. Counsel for Dis. v. Lopez Wilson*, 262 Neb. 653, 634 N.W.2d 467 (2001). In *Lopez Wilson*, the respondent engaged in a course of conduct in which he, inter alia, personally confronted his client at the client's home in a hostile manner, threatened his client that he would alert the court that the client had not been truthful, and contacted an opposing party with information potentially damaging to the client's case, all in an attempt, in part, to collect a legal fee. We concluded that the respondent's conduct had a negative effect on the public's perception of attorneys and the Nebraska State Bar Association in general. We further stated that "[w]ith regard to the protection of the public . . . ' " 'courts have a duty to maintain public confidence in the legal system and to protect and enhance the attorney-client relationship in all its dimensions.' " ' " *Id.* at 661, 634 N.W.2d at 474 (quoting *State v. Hawes*, 251 Neb. 305, 556 N.W.2d 634 (1996)). We determined that the respondent's threats undermined the confidential and

fiduciary nature of the attorney-client relationship and lessened the public's confidence in the legal profession. We also stated that hostile, threatening, and disruptive conduct reflects on an attorney's honesty, trustworthiness, diligence, and reliability. We concluded that an attorney's conduct which includes progressively abusive language and threats "violate[d] disciplinary rules that prohibit engaging in conduct prejudicial to the administration of justice and engaging in conduct that adversely reflects on one's fitness to practice law." *Id.* at 662, 634 N.W.2d at 475.

Based on our de novo review of the record, see *State ex rel. NSBA v. Gallner*, 263 Neb. 135, 638 N.W.2d 819 (2002), we conclude that the record in the instant case establishes by clear and convincing evidence that respondent engaged in conduct that was prejudicial to the administration of justice and that adversely reflected on respondent's fitness to practice law, in violation of DR 1-102(A)(1), (5), and (6).

### (b) DR 7-101(A)(3)

For his second assignment of error, respondent challenges the referee's conclusion that respondent violated DR 7-101(A)(3) by engaging in conduct that was prejudicial or damaging to Brian during the course of the professional relationship. In support of this assignment of error, respondent raises two arguments. First, respondent claims that certain of his actions are protected by his federal and state constitutional rights to free speech, and thus cannot serve as a basis for an attorney disciplinary proceeding. Second, respondent claims that his actions involved a "former client," and thus, did not occur " 'during the course of the professional relationship.' " Brief for respondent at 13. We find no merit to this assignment of error.

■ Initially, we note that we have previously recognized that assertions of an attorney's right to free speech require "a delicate balancing of the interests in upholding the integrity of our judicial system and in protecting the right of an attorney to free expression." *State ex rel. Nebraska State Bar Assn. v. Michaelis*, 210 Neb. 545, 555, 316 N.W.2d 46, 52 (1982). Nonetheless, we have recognized that "instances can exist where an attorney's criticism or conduct would be impermissible and the subject of professional discipline." *Id.* at 556, 316 N.W.2d at 53. In

*Michaelis*, we concluded that notwithstanding an attorney's claim that his conduct was protected by his constitutionally guaranteed right to free speech, the record demonstrated that the attorney's statements were unethical and unprofessional and in violation of the Code of Professional Responsibility. In reaching this conclusion, we quoted Justice Stewart of the U.S. Supreme Court, who, in a concurring opinion speaking for five members of the Court, stated:

> "If, as suggested by [Justice] Frankfurter, there runs through the principal opinion an intimation that a lawyer can invoke the constitutional right of free speech to immunize himself from even-handed discipline for proven unethical conduct, it is an intimation in which I do not join. A lawyer belongs to a profession with inherited standards of propriety and honor, which experience has shown necessary in a calling dedicated to the accomplishment of justice. He who would follow that calling must conform to those standards.

> "Obedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech."

(Emphasis omitted.) *Id.* at 556-57, 316 N.W.2d at 53 (quoting *In re Sawyer*, 360 U.S. 622, 79 S. Ct. 1376, 3 L. Ed. 2d 1473 (1959) (Stewart, J., concurring)).

In the instant case, although we agree that respondent "[did] not surrender his freedom of expression upon becoming an attorney," we conclude that "upon admission to the bar [respondent] incur[red] the obligation to temper his [expression] in the manner allowed by the canons of professional ethics." See *State ex rel. Nebraska State Bar Assn. v. Michaelis*, 210 Neb. at 557, 316 N.W.2d at 53. Accordingly, we conclude there is no merit to respondent's claim that his behavior, if unethical, was protected by his constitutional rights to free speech.

■ Respondent also claims that he could not have violated DR 7-101(A)(3) because certain of the conduct in which he engaged occurred after Brian had retained new counsel and that thus, the challenged conduct did not occur "during the course of the professional relationship." We disagree. It has been recognized that there is a "distinction between 'professional employment' and 'professional relationship.' A lawyer owes a duty to a

client in the context of a 'professional relationship' long after the 'professional employment' has terminated." See *In re Adams*, 293 Or. 727, 737, 652 P.2d 787, 792 (1982) (concluding attorney violated DR 7-101(A)(3) by filing declaratory judgment suit to set aside former client's workers' compensation award after client had terminated attorney's employment). In this connection, we have held that after the professional employment has terminated, an attorney generally has an ongoing obligation to maintain client confidences. See, generally, *State ex rel. Counsel for Dis. v. Lopez Wilson*, 262 Neb. 653, 634 N.W.2d 467 (2001). Furthermore, we have observed that notwithstanding the cessation of the attorney-client employment relationship, an attorney must avoid the present representation of a cause against a client that the attorney formerly represented, and which cause involves a subject matter which is the same as or substantially related to that formerly handled by that attorney. *State ex rel. Wal-Mart v. Kortum*, 251 Neb. 805, 559 N.W.2d 496 (1997). We conclude that respondent's ethical obligation not to engage in conduct that was prejudicial or damaging to Brian during the course of the professional relationship extended beyond the termination of respondent's employment relationship with Brian, and respondent's actions after Brian had secured new counsel can be considered when determining whether respondent violated DR 7-101(A)(3).

Based on our de novo review of the record, see *State ex rel. NSBA v. Gallner*, 263 Neb. 135, 638 N.W.2d 819 (2002), we conclude that the record in the instant case establishes by clear and convincing evidence that respondent engaged in conduct that was prejudicial and damaging to Brian during the course of the professional relationship, in violation of DR 7-101(A)(3). Among other actions, respondent deliberately contacted counsel for the opposing party in an attempt to minimize the amount of the settlement Brian might receive in his workers' compensation case and contacted the judge scheduled to try Brian's workers' compensation claim and impugned Brian's willingness to tell the truth, all after the attorney-client employment relationship had ceased but while the attorney-client professional relationship was intact. Given this record, we find no merit to respondent's second assignment of error.

### (c) DR 7-105(A)

For his third assignment of error, respondent claims that the referee erred in concluding that respondent engaged in conduct violating DR 7-105(A), which provides, inter alia, that a lawyer should not threaten to present criminal charges solely to obtain an advantage in a civil matter. Respondent does not deny that he threatened criminal prosecution against Brian as a result of Brian's response to a request for admissions propounded by respondent. Respondent asserts, however, that "the threat of criminal prosecution in this case was not made *solely* to gain an advantage in a civil proceeding." Brief for respondent at 16.

This argument is without merit. The allegedly perjured statement was made in the course of respondent's attempt to collect the legal fee which he felt was owed to him. Respondent's claim that "his intent was to give [Brian] an opportunity to retract that statement before it was relied upon in the official proceeding" is disingenuous. Brief for respondent at 16. The "official proceeding" referred to by respondent was a proceeding on his claimed attorney fee. In this regard, we note that respondent admitted during the hearing in this case that the purportedly perjured statement, having to do with Brian's assertion that he withdrew respondent's authority to settle the workers' compensation case for $150,000, had no bearing on respondent's entitlement to an attorney fee. Based on our de novo review of the record, see *State ex rel. NSBA v. Gallner, supra,* we conclude that the record in the instant case establishes by clear and convincing evidence that respondent threatened to present criminal charges solely to obtain an advantage in a civil matter, in violation of DR 7-105(A).

### (d) Violation of Attorney's Oath

Although the referee made no finding in this regard, we conclude that by virtue of respondent's conduct, we find by clear and convincing evidence that in addition to violating DR 1-102(A)(1), (5), and (6); DR 7-101(A)(3); and DR 7-105(A), respondent has violated the attorney's oath of office. See § 7-104.

### 2. Imposition of Attorney Discipline

We have stated that the basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the

circumstances. *State ex rel. Counsel for Dis. v. Brinker*, 264 Neb. 478, 648 N.W.2d 302 (2002); *State ex rel. Counsel for Dis. v. Rickabaugh*, 264 Neb. 398, 647 N.W.2d 641 (2002). With respect to the imposition of attorney discipline in an individual case, we have stated that "[e]ach case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case." *State ex rel. NSBA v. Rothery*, 260 Neb. 762, 766, 619 N.W.2d 590, 593 (2000). We have previously set out the factors which we consider in determining whether and to what extent discipline should be imposed:

> To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance and reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law.

*State ex rel. Counsel for Dis. v. Thompson*, 264 Neb. 831, 842, 652 N.W.2d 593, 601 (2002).

The evidence in the present case establishes, inter alia, that respondent acted so as to preserve his own interests at the expense of those of Brian. Respondent was verbally abusive to Brian and behaved in a manner which Brian found to be threatening. Respondent contacted opposing counsel and the court in a manner that was likely to be deleterious to his former client's interests. Respondent also threatened criminal prosecution solely for the purpose of gaining an advantage in a civil matter. Respondent's behavior demonstrates a disregard for Brian's interests and for the rules of professional conduct and responsibility.

In assessing the appropriate discipline to be imposed in this case, we note that respondent has been the subject of two prior attorney discipline proceedings. In 1999, respondent was privately reprimanded for sending out advertising brochures to potential clients which contained a false or misleading statement. In 2000, respondent was again privately reprimanded, this time for leaving verbally abusive messages on his clients' answering machines when the clients indicated some concern with regard to a settlement respondent had negotiated; conduct

which we have noted is similar to certain of respondent's actions in the instant case. We have held that cumulative acts of attorney misconduct are distinguishable from isolated incidents, therefore justifying more serious sanctions. See *State ex rel. NSBA v. Frederiksen*, 262 Neb. 562, 635 N.W.2d 427 (2001).

In the instant case, the referee recommended that respondent be suspended from the practice of law for a period of 1 year. Respondent claims on appeal that such a punishment is excessive. We disagree. To the contrary, we are of the opinion that the referee's recommendation of a 1-year suspension is too lenient and, if applied, would depreciate the seriousness of respondent's actions. See *State ex rel. NSBA v. Gleason*, 248 Neb. 1003, 540 N.W.2d 359 (1995). When we balance the need to protect the public, the nature of respondent's offenses, the need for deterring others, the reputation of the bar as a whole, and respondent's prior disciplinary proceedings against respondent's interest in preserving his privilege to practice law, we must conclude that the only appropriate judgment is to suspend respondent from the practice of law for a period of 2 years, effective immediately.

## VI. CONCLUSION

It is the judgment of this court that respondent be suspended from the practice of law for a period of 2 years, effective immediately, after which time respondent may apply for reinstatement. Respondent shall comply with Neb. Ct. R. of Discipline 16 (rev. 2001), and upon failure to do so, respondent shall be subject to punishment for contempt of this court. Accordingly, respondent is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. of Discipline 23(B) (rev. 2001).

JUDGMENT OF SUSPENSION.

STEPHAN, J., participating on briefs.