704 N.W.2d 810 (2005)
2005 ND 171
In the Matter of the Application for Reinstatement of Randall L. HOFFMAN.
Randall L. Hoffman, Petitioner
v.
Disciplinary Board of the Supreme Court of the State of North Dakota, Respondent.
No. 20050162.
Supreme Court of North Dakota.
October 18, 2005.
*811 Randall L. Hoffman (pro se), Elgin, N.D.
Paul W. Jacobson, Bismarck, N.D. for respondent.
PER CURIAM.
[¶ 1] Randall L. Hoffman petitioned for reinstatement to the bar and challenged the Disciplinary Board's recommendation that he not be admitted to the bar at this time. We adopt the recommendation of the Board and deny Hoffman's petition for reinstatement.

I
[¶ 2] On October 23, 2003, this Court suspended Hoffman from the practice of law for one year beginning December 1, 2003, and ordered that he pay the costs of the disciplinary proceeding because of his violations of N.D.R. Prof. Conduct 1.12(a), 3.4(d), 4.2 and 4.4. See In re Hoffman, 2003 ND 161, ¶ 33, 670 N.W.2d 500. The disciplinary action was based on three incidents of attorney misconduct. In the first incident, the Toltzman matter, Hoffman, while sitting as a district judge, granted a default judgment in favor of the wife in a divorce action. Id. at ¶ 2. After Hoffman resigned as district judge, he represented *812 the husband in the Toltzman divorce action without the consent of the wife and moved to amend the divorce judgment. Id. at ¶ 3. In the second incident, Hoffman attempted to settle a visitation dispute with Ray Remmick, the father of the child of Hoffman's fiancée without Remmick's consent to the discussion being held outside the presence of his attorney. Id. at ¶¶ 4, 5. Hoffman threatened that if Remmick did not sign a document indicating his consent and discuss visitation without his attorney being present, Remmick would not receive visitation with the child that night. Id. at ¶ 5. When Remmick refused, he was denied visitation. Id. In the third incident, Hoffman harassed Remmick with numerous discovery requests in the visitation proceedings seeking facts intimate to his sexual relationship with Hoffman's fiancée.
[¶ 3] In October 2004, Hoffman filed a petition for reinstatement under N.D.R. Lawyer Discipl. 4.5. Following a March 11, 2005, hearing before a hearing panel appointed by the Board, the Board recommended that Hoffman not be currently reinstated to the practice of law because he had failed to meet his burden of demonstrating his qualifications for reinstatement under N.D.R. Lawyer Discipl. 4.5(F)(3) and (5). The Board also recommended that Hoffman pay the costs of the reinstatement proceeding in the amount of $1,558.10.

II
[¶ 4] Hoffman raises numerous challenges to the Board's findings, conclusions and recommendation.
[¶ 5] "A court which has the power to suspend or disbar an attorney also has the power to reinstate, upon proper and satisfactory proof that, as a result of his discipline, he has become a fit and proper person to be intrusted with the office of an attorney." Application of Christianson, 202 N.W.2d 756 Syll. ¶ 1 (N.D.1972). Reinstatement is not a matter of right. Application of Christianson, 253 N.W.2d 410, 413 (N.D.1977). Rather, the petitioner has the burden of establishing the averments of his application for reinstatement or readmission by clear and convincing evidence, and the proof must be "of a satisfactory character and of sufficient weight to overcome the former adverse judgment as to the petitioner's character." Application of Christianson, 215 N.W.2d 920, 923 (N.D.1974). We review proceedings for reinstatement de novo on the record and accord due weight to the findings, conclusions, and recommendations of the hearing panel as adopted by the Board. In re Montgomery, 2000 ND 127, ¶ 5, 612 N.W.2d 278. Each case must be judged on its own facts and merits. In re Montgomery, 1997 ND 148, ¶ 5, 566 N.W.2d 426.
[¶ 6] The Board determined that Hoffman failed to demonstrate he met the qualifications for reinstatement listed under N.D.R. Lawyer Discipl. 4.5(F)(3) and (5), which provide:
3. The petitioner has not engaged or attempted to engage in the unauthorized practice of law during the period of suspension or disbarment;
. . . .
5. The petitioner recognizes the wrongfulness and seriousness of the misconduct for which the petitioner was suspended or disbarred.
[¶ 7] The Board made the following relevant findings and conclusions in support of its recommendation to deny Hoffman's petition for reinstatement:
2.
In large part, the conduct which led to Hoffman's suspension concerned his involvement in a visitation dispute between his then fiancé[e] (now wife) and the father of her child. During the time of his suspension, Hoffman engaged in *813 communication with the father and the father's wife through entries in Hoffman's [I]nternet Yahoo Member Directory profile. These communications were disparaging and demeaning.
3.
During the time of Hoffman's suspension, the litigation between Hoffman's wife and the father of her child continued. Among other things, there were filings with the District Court and an appeal to the Supreme Court of North Dakota. Hoffman's wife, a non-lawyer, purportedly represented herself in all of the proceedings. Hoffman admitted that he assisted his wife in the litigation but stated his assistance was limited to matters of grammar, spelling and syntax.
4.
Hoffman testified that he recognized the wrongfulness and seriousness of the misconduct for which he was originally suspended. His statements, however, appear to be a recitation of the conclusions of the North Dakota Supreme Court and did not reflect contrition or sincerity.
. . . .
2.
The panel concludes that Hoffman likely engaged in the unauthorized practice of law during his suspension by virtue of his participation in the various filings purportedly made pro se by his wife in the visitation dispute between her and the father of [her] child (Rule 4.5F(3), NDRLD). The North Dakota Supreme Court has stated that an "attorney suspended shall refrain, during such suspension, from all aspects of the ordinary law practice. . . ." Disciplinary Board v. Larson, 485 N.W.2d 345 (N.D.1992). Hoffman's admitted participation with his wife in the preparation of filings with the District Court and the Supreme Court runs afoul of this Rule. Hoffman's reliance on Rule 5.5 of the North Dakota Rules of Professional Conduct that a lawyer may counsel non-lawyers who wish to represent themselves misses the mark as, at all relevant times, Hoffman was suspended from the practice of law and should have refrained from providing any legal advice or assistance to his wife in connection with the pleadings and filings in connection with the visitation dispute. Hoffman has failed to meet his burden with respect to Rule 4.5F(3).
3.
While his words may have suggested that Hoffman recognizes the wrongfulness and seriousness of the misconduct for which he was suspended, his demeanor during the course of the hearing suggested otherwise. Moreover, his admitted participation in the visitation dispute between his wife and the father of her child, even if such conduct does not rise to the unauthorized practice of law, constitutes further evidence that he does not fully recognize the wrongfulness and seriousness of his misconduct. As such, Hoffman has failed to meet his burden with respect to Rule 4.5F(5).

A
[¶ 8] Hoffman challenges the Board's finding that he engaged in disparaging and demeaning communications over the Internet with Remmick and his wife during the period of his suspension.
[¶ 9] Hoffman argues that his involvement in the visitation dispute was not, as the Board found, a "large part" of the reasoning for his suspension because he had originally been offered "a $500 cost assessment and 90 day suspension" if he had admitted all of the facts in the prior *814 suspension proceeding. Obviously, Hoffman's involvement in the visitation dispute was a "large part" of the conduct leading to his suspension. Two of the three incidents of attorney misconduct were directly related to the visitation dispute. See In re Hoffman, 2003 ND 161, ¶¶ 4-6, 670 N.W.2d 500. Any past offer by the Board to settle the misconduct charges is irrelevant in this proceeding.
[¶ 10] Hoffman objects to the Board's finding that he "engaged in communication" with Remmick, one of the victims of Hoffman's previous misconduct, and Remmick's wife. The Board gave Remmick notice of Hoffman's petition for reinstatement under N.D.R. Lawyer Discipl. 4.5(F) and allowed Remmick to submit comments and other information concerning the petition for reinstatement. Remmick submitted a letter complaining about Hoffman's continuing "har[ ]assment" in their visitation dispute and copies of legal documents relating to that dispute filed in the district court. Remmick also submitted approximately 20 copies of 2004 entries from Hoffman's personal "Profile" on an Internet web page that can be viewed by others. In one entry, Hoffman states, "My stepdaughters have plenty of sunshine in their lives . . . except for the stupidity of their natural dads and step-mom." Another entry states, "I realize that as a matter of record that your hubby admits that he is no rocket scientist . . . You are either hilarious or completely lacking common sense. What a waste of human resources, times, energies, and finances!" Yet another entry contains a picture of Hoffman's family and states, "Its [sic] on the worldwide web. I don't want a psycho endangering my family." The other entries contain similarly disparaging and demeaning remarks.
[¶ 11] Hoffman argues he was not communicating with Remmick because the comments were directed at Remmick's wife and she had to seek out Hoffman's "Profile" on the Internet to view the comments. During the hearing, Hoffman admitted that he knew Remmick's wife would find the entries on his Internet "Profile" and that he was "communicating with her." The only reasonable inference to be drawn from Hoffman's communications with Remmick's wife is that she would, in turn, inform Remmick of the contents of Hoffman's entries. We conclude, as did the Board, that Hoffman intended to convey his disparaging and demeaning remarks to both Remmick and his wife.
[¶ 12] Hoffman also asserts that any reliance placed by the Board on his Internet communications violates his state and federal constitutional rights to freedom of speech. This Court has ruled that the First Amendment does not preclude sanctioning a lawyer for intemperate speech during a courtroom proceeding. See In re Garaas, 2002 ND 181, ¶ 28, 652 N.W.2d 918. Even outside of a courtroom setting, "a lawyer's speech may be limited more than that of a lay person." In re Gershater, 270 Kan. 620, 17 P.3d 929, 936 (2001). See also State ex rel. Counsel for Discipline v. Sipple, 265 Neb. 890, 660 N.W.2d 502, 509-10 (2003) (quoting In re Sawyer, 360 U.S. 622, 646-47, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959) (Stewart, J., concurring)) ("`Obedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech'"). Committee on Legal Ethics v. Douglas, 179 W.Va. 490, 370 S.E.2d 325, 332 (1988) ("statements that are outside of any community concern, and are merely designed to ridicule or exhibit contumacy toward the legal system, may not enjoy First Amendment protection"). In the context of applications for admission or readmission to the bar, courts routinely hold that an applicant's "abusive, disruptive, hostile, intemperate, *815 intimidating, irresponsible, threatening, or turbulent behavior is a proper basis" for denying the application. In re Lane, 249 Neb. 499, 544 N.W.2d 367, 375 (1996). See also Board of Overseers of the Bar v. Campbell, 663 A.2d 11, 13-14 (Me.1995); In re Alexander, 807 S.W.2d 70, 73-75 (Mo.1991).
[¶ 13] For example, in In re Converse, 258 Neb. 159, 602 N.W.2d 500, 502 (1999), an applicant for admission to the bar argued the Bar Commission's decision to deny his application should be reversed because the denial rested upon conduct protected by the First Amendment. The Nebraska Supreme Court rejected the argument, reasoning:
An investigation of Converse's moral character is not a proceeding in which the applicant is being prosecuted for conduct arguably protected by the First Amendment, but, rather, "an investigation of the conduct of [an applicant] for the purpose of determining whether he shall be [admitted]." See In re Doss, 367 Ill. 570, 572, 12 N.E.2d 659, 660 (1937).
Were we to adopt the position asserted by Converse in this case, the Commission would be limited to conducting only cursory investigations of an applicant's moral character and past conduct. Justice Potter Stewart, writing for the majority in Law Students Research Council v. Wadmond, [401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971) ], noted that the implications of such an attack on a bar screening process are that no screening process would be constitutionally permissible beyond academic examination and an extremely minimal check for serious, concrete character deficiencies. "The principle means of policing the Bar would then be the deterrent and punitive effects of such post-admission sanctions as contempt, disbarment, malpractice suits, and criminal prosecutions." 401 U.S. at 167, 91 S.Ct. 720. Assuming but not deciding that Converse's conduct may have been protected by the First Amendment to the U.S. Constitution, Law Students Research Council v. Wadmond, supra, makes clear that a bar commission is allowed to consider speech and conduct in making determinations of an applicant's character, and that is precisely what has occurred in the instant case. As aptly stated by the South Dakota Supreme Court in In re Egan, 24 S.D. 301, 326-27, 123 N.W. 478, 488 (1909):
[T]here can be such an abuse of the freedom of speech and liberty of the press as to show that a party is not possessed "of good moral character," as required for admission to the bar of this state . . . and therefore to require that such person be excluded from the bar of this state; and to our mind the evidence submitted here shows such an instance. . . . "Nor can the respondent be justified on the ground of guaranteed liberty of speech. When a man enters upon a campaign of vil[ ]ification, he takes his fate into his own hands, and must expect to be held to answer for the abuse of the privilege extended to him by the Constitution.. . . ."
We conclude that the Commission properly considered Converse's conduct as it reflects upon his moral character, even if such conduct might have been protected by the First Amendment. Converse's first assignment of error is therefore without merit.
Id. at 506. See also In re Martin-Trigona, 55 Ill.2d 301, 302 N.E.2d 68, 72 (1973) (the "question presented is not the scope of petitioner's rights under the first amendment but whether his propensity to unreasonably react against anyone whom he believes opposes him reveals his lack of *816 responsibility, which renders him unfit to practice law").
[¶ 14] Under N.D.R. Lawyer Discipl. 4.5(F)(1), the petitioner's "fitness" is a factor for consideration in assessing the petitioner's qualifications for reinstatement. We conclude the Board's consideration of Hoffman's conduct in harassing the family of the victim of the misconduct that formed part of the basis for his suspension from the practice of law does not violate Hoffman's rights to freedom of speech under either the state or federal constitutions.

B
[¶ 15] Hoffman argues the Board erred in concluding that he engaged in the unauthorized practice of law during his suspension by assisting his wife who was acting pro se in her visitation litigation with Remmick. Numerous documents purportedly prepared by Hoffman's wife that were filed in the district court and this Court in connection with the visitation litigation were presented to the Board. These documents, which include motions, legal briefs, and a warrant of attachment, do not appear to be the product of a lay person. Hoffman acknowledged that he assisted his wife in the preparation of several of the documents, but insisted he only "helped her with grammar, spelling and syntax."
[¶ 16] The Board found only that Hoffman "likely engaged" in the unauthorized practice of law during his suspension. Although this Court in In re Larson, 485 N.W.2d 345, 350 (N.D.1992), stated "[a] suspended attorney must refrain from all facets of the practice of law," that case involved a suspended attorney who was disciplined for drafting a power of attorney for a client, selling real estate for clients, attempting to file a small claims court action on behalf of a client and preparing tax returns for clients during the period of her suspension. The case did not involve a suspended attorney who advised or assisted a member of the family on legal matters. See generally N.D.Code Jud. Conduct Canon 4(G) ("A judge shall not practice law . . . [but] may, without compensation, give legal advice to and draft or review documents for a member of the judge's family"); In re Tady, 2 Cal. State Bar Ct. Rptr. 121, 127 (Cal.Bar Ct.1992) ("We do not decide, on this review, whether giving legal advice privately to a member of one's immediate family, without more, constitutes a violation of the prohibition against practicing law while an inactive member of the State Bar, nor whether the authorities cited above regarding judges apply to inactive members"). It is unnecessary for us to decide whether Hoffman engaged in the unauthorized practice of law during his suspension because we conclude Hoffman's other conduct relied upon by the Board supports its recommendation.

C
[¶ 17] Hoffman argues the Board erred in finding that, although Hoffman testified he recognized the wrongfulness and seriousness of the misconduct for which he was originally suspended, "[h]is statements . . . appear to be a recitation of the conclusions of the North Dakota Supreme Court and did not reflect contrition or sincerity."
[¶ 18] At the hearing, Hoffman testified, "[a]s a lawyer I admit that the facts and conclusions of the Supreme Court in their opinion in this matter are true and correct." When questioned about his "revelation[s]" regarding the violations of the disciplinary rules leading to his suspension, Hoffman testified about the "true facts" by reciting at length from this Court's opinion in the disciplinary case. Addressing the Toltzman matter, Hoffman testified he "regret[ed] that I was unable to find the opinion of the general counsel *817 for the State of Alabama which clearly defined that which constitutes personal and substantial involvements," and "[h]ad I known of this opinion I would have accepted the private reprimand originally issued for this misconduct." Addressing the Remmick matter, Hoffman testified there was no "evidence of an actual representation of an attorney/client relationship" with his fiancée. Hoffman testified he was "upset" that disciplinary counsel asked him more questions during the reinstatement hearing than were asked at the previous disciplinary hearing. Hoffman also testified that he "resent[ed]" his own "inability to see what reasonably and rationally was justice in this disciplinary proceeding." The transcript reflects Hoffman's anger and resentment toward the persons responsible for his suspension. The record as a whole, including Hoffman's continued harassment of the Remmicks and his continued involvement in the visitation dispute, evidences Hoffman's lack of understanding of the seriousness of the misconduct resulting in his suspension.
[¶ 19] The Board applied the appropriate legal standards and we agree with its determination that Hoffman does not recognize the wrongfulness and seriousness of his misconduct.

D
[¶ 20] Hoffman asserts the Board erroneously admitted two exhibits in violation of the hearsay rules "and any other rule of evidence that requires reasonable notice and the Due Process clauses of the state and federal constitution[s]." The first exhibit, which Hoffman received three days before the hearing, contained a written statement from Remmick accompanied with copies of Hoffman's Internet "Profile" entries and legal documents filed in the district court visitation litigation. The second exhibit was a copy of a legal brief filed in this Court supposedly written by Hoffman's wife for purposes of the visitation litigation.
[¶ 21] Under N.D.R. Lawyer Discipl. 4.5(F), victims of attorney misconduct are entitled to notice of a suspended attorney's petition for reinstatement and are "entitled to submit comments or other information concerning the petition for reinstatement." The rules of evidence apply in reinstatement proceedings only "insofar as appropriate." N.D.R. Lawyer Discipl. 3.5(B). Although disciplinary counsel argues a victim's entitlement to submit comments and other information should prevail over any contrary rule of evidence, we need not decide the issue here. Even if the rules of evidence applied, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." N.D.R.Ev. 103(a). Moreover, there is no right to redress if a party cannot show prejudice resulting from a constitutionally deficient notice. Morrell v. North Dakota Dept. of Transp., 1999 ND 140, ¶ 11, 598 N.W.2d 111. Hoffman acknowledged that the copies of the entries in the Internet "Profile" were his and addressed the documents in the first exhibit. Hoffman identified the second exhibit as his wife's brief. Not only has Hoffman failed to specify how any rules of evidence were violated, Hoffman has not shown that a substantial right was adversely affected or that any prejudice resulted from the Board's admission of these exhibits.
[¶ 22] We conclude the Board properly admitted the challenged exhibits.

III
[¶ 23] Upon our consideration of the entire record, we conclude Hoffman has failed to establish by clear and convincing evidence that he should be reinstated to the practice of law in any capacity. We adopt the Board's recommendation, deny *818 the petition, and order that Hoffman pay the costs of the reinstatement proceeding in the amount of $1,558.10.
[¶ 24] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.