2013 ND 244

**In the Matter of the Application for REINSTATEMENT OF Monty J. STENSLAND, A Person Admitted to the Bar of the State of North Dakota.**

Monty J. Stensland, Petitioner

v.

**Disciplinary Board of the Supreme Court of the State of North Dakota, Respondent.**

No. 20130008.

Supreme Court of North Dakota.

Dec. 19, 2013.

Monty J. Stensland, self-represented, Grand Forks, N.D., petitioner; submitted on brief.

Brent J. Edison, Bismarck, N.D., for respondent.

PER CURIAM.

[¶ 1] Monty Stensland petitioned for reinstatement to the bar and now challenges a Disciplinary Board hearing panel's recommendation on remand that he not be admitted to the bar at this time. We adopt the panel's recommendation, deny Stensland's petition for reinstatement, and assess recommended costs.

I

[¶ 2] This Court suspended Stensland from the practice of law for one year, effective July 16, 2011, for violation of N.D.R. Lawyer Discipl. 1.2(A)(3) (dishonesty, fraud, deceit, or misrepresentation); N.D.R. Prof. Conduct 8.4(c) (dishonesty, fraud, deceit, or misrepresentation); N.D.R. Prof. Conduct 1.4(a) and (b) (failing to properly communicate with client); N.D.R. Prof. Conduct 1.5(b) (failing to communicate to the client the basis, rate,

or amount of the fee); N.D.R. Prof. Conduct 1.15(a), (c), and (d) (mishandling client funds and failing to refund unearned advance fees); and N.D.R. Prof. Conduct 1.16(e) (failing to take appropriate steps upon withdrawal from representation, including return of unearned advance fees). *See Disciplinary Board v. Stensland*, 2011 ND 110, 799 N.W.2d 341. Stensland had previously been suspended for a period of 60 days in both May 2009 and January 2007 for other violations under the Rules of Professional Conduct and Rules for Lawyer Discipline. *See Disciplinary Board v. Stensland*, 2006 ND 251, ¶ 12, 725 N.W.2d 191; *see also Disciplinary Board v. Stensland*, 2009 ND 77, ¶ 21, 764 N.W.2d 438.

[¶ 3] In August 2012, Stensland filed a petition for reinstatement. Following an October 10, 2012, hearing before a hearing panel appointed by the Board, the Board recommended that Stensland be reinstated to the practice of law, subject to passing the ethics portion of the bar exam and subject to his practice being monitored for a period of six months under N.D.R. Lawyer Discipl. 4.5(H)(6).

[¶ 4] In February 2013, after the panel recommended the reinstatement of Stensland, the Disciplinary Board moved to remand the matter to the hearing panel for consideration of new information. We ordered a remand to the hearing panel for consideration of the new information.

[¶ 5] On remand, the hearing panel recommended Stensland not be reinstated, because the panel no longer believes he is a changed man after the inclusion of new evidence on remand and because of inconsistent factual assertions made by him on remand, as well as the inclusion of several "facts" not in evidence in his argument to the panel. The panel also recommended that Stensland pay the costs of the reinstatement proceeding as previously recommended in the amount of $1773.31 and the costs of the proceeding on remand in the amount of $3619.32.

[¶ 6] The hearing panel had jurisdiction under N.D.R. Lawyer Discipl. 4.5(F). Stensland and Disciplinary Counsel filed timely objections to the hearing panel's report on remand under N.D.R. Lawyer Discipl. 4.5(F). This Court has jurisdiction under N.D. Const. art. VI, § 3, N.D.C.C. § 27–14–01, and N.D.R. Lawyer Discipl. 4.5(F).

## II

[¶ 7] Stensland raises numerous challenges to the hearing panel's findings, conclusions, and recommendation on remand.

[¶ 8] We have stated the applicable law for reinstatement proceedings:

"A court which has the power to suspend or disbar an attorney also has the power to reinstate, upon proper and satisfactory proof that, as a result of his discipline, he has become a fit and proper person to be intrusted with the office of an attorney." *Application of Christianson*, 202 N.W.2d 756, Syll. ¶ 1 (N.D. 1972). Reinstatement is not a matter of right. *Application of Christianson*, 253 N.W.2d 410, 413 (N.D.1977). Rather, the petitioner has the burden of establishing the averments of his application for reinstatement or readmission by clear and convincing evidence, and the proof must be "of a satisfactory character and of sufficient weight to overcome the former adverse judgment as to the petitioner's character." *Application of Christianson*, 215 N.W.2d 920, 923 (N.D. 1974). We review proceedings for reinstatement de novo on the record and accord due weight to the findings, conclusions, and recommendations of the hearing panel as adopted by the Board. *In re Montgomery*, 2000 ND 127, ¶ 5, 612 N.W.2d 278. Each case must be

judged on its own facts and merits. *In re Montgomery,* 1997 ND 148, ¶ 5, 566 N.W.2d 426.

*Hoffman v. Disciplinary Board,* 2005 ND 171, ¶ 5, 704 N.W.2d 810.

[¶ 9] The panel found Stensland has not demonstrated his qualifications for reinstatement to the practice of law under N.D.R. Lawyer Discipl. 4.5(F), which provides, in part:

> The hearing panel shall conduct a hearing at which the petitioner has the burden of demonstrating the petitioner's qualifications for reinstatement or readmission. Factors that may be considered include evidence of the following:
>
> 1. The petitioner's fitness and competence to practice law;
>
> 2. The petitioner has fully complied with the terms and conditions of all applicable disciplinary orders and rules;
>
> 3. The petitioner has not engaged or attempted to engage in the unauthorized practice of law during the period of suspension or disbarment;
>
> . . . .
>
> 5. The petitioner recognizes the wrongfulness and seriousness of the misconduct for which the petitioner was suspended or disbarred;
>
> 6. The petitioner has not engaged in any other professional misconduct since suspension or disbarment; or
>
> 7. Notwithstanding the conduct for which the petitioner was disciplined, the petitioner has the requisite honesty and integrity to practice law.

[¶ 10] The panel made the following relevant findings and conclusions in support of its recommendation to deny reinstatement:

2.

In this case, Stensland was suspended from the practice of law at the time he communicated with Pierson regarding representation in a divorce. N.D.R. Prof. Conduct 5.5(d) prohibits a lawyer who is not admitted to practice in this jurisdiction representing or holding out to the public that the lawyer is admitted to practice law in this jurisdiction. By the interaction between Stensland and Pierson, which included his accepting a check for $2,000 made payable to the Stensland Law Firm, by his telling Pierson that his associate would sign documents so Pierson's husband's lawyer would not know who her lawyer was, and by the very fact that he did not reveal to her that he was suspended from the practice of law, Stensland violated, or attempted to violate N.D.R. Prof. Conduct 5.5. Although both Stensland and Pierson testified that Stensland did not request that Pierson bring the check to their February 2nd meeting, Stensland should have refused to accept a check from Pierson made out to the Stensland Law Firm because he was not permitted at that time to engage in the practice of law. At the very least, Stensland did not meet the burden of proving that the episode with Pierson did not amount to the practice of law, or the attempted practice of law.

3.

In the course of his opposition to the remand by the Supreme Court, Stensland asserted . . . that he placed the $2,000 check he had received from Pierson in an intake file. He also claimed that after Disciplinary Counsel took action (relating to the meeting he had with Pierson), he determined it would be best to simply return Pierson's intake file and her check to her. He further said

"On February 14, 2013, I returned the clerical intake information file along with her check to Debra Pierson." The evidence presented at the hearing, however, clearly shows that Stensland did not return Pierson's check to her; rather he paid her back with a personal check. In this regard, it is noted that Stensland claimed at the hearing that he had negotiated the cashier's check that he received from Pierson and kept the $2,000 in cash in a desk drawer with the intention of giving the cash to Mr. Omdahl of Omdahl and Morgenstern, but he never gave the money to Omdahl. The Hearing Panel does not give sufficient credibility to Stensland's claim about what he did with the cash he obtained from negotiating the Pierson check, to find that he in fact did keep it for some time in his desk drawer. What the Hearing Panel does conclude is that Stensland expediently made a false claim to the Supreme Court in his Response ... to Motion to Remand to Hearing [Panel], by claiming that he simply put the cashier's check in an intake folder and subsequently returned the cashier's check to her.

4.

Given the new evidence presented on remand, the inconsistent factual assertions by Stensland on remand, and the inclusion of several "facts" not in evidence in his final argument to this panel, the panel no longer believes that Mr. Stensland is a changed man.

(Citations omitted.)

[¶ 11] Stensland objects to the hearing panel's recommendation that he does not possess the requisite honesty and integrity to be reinstated to practice law. He also argues that at no time did the members of the hearing panel review or discuss the facts and evidence presented at the hearing on remand in the light most favorable to him.

[¶ 12] To support these contentions, Stensland first challenges the panel's finding he engaged in the practice of law when he met with Debra Pierson. Under N.D.R. Prof. Conduct 5.5(d), a lawyer who is not admitted to practice in this jurisdiction is prohibited from representing or holding out to the public that he is admitted to practice law in this jurisdiction. Stensland argues the testimony presented by Debra Pierson supports his position that he performed only an intake of information, a function any law clerk, paralegal, or secretary can perform on a daily basis. He also refers to Pierson's testimony about being informed multiple times she was to be contacted by the Omdahl and Morgenstern Law Office in a week to 10 days after the meeting between herself and Stensland. He argues Pierson clearly testified that he never stated he was going to represent her, that he never asked her for money, and that the cashier's check she produced was of her own initiative.

[¶ 13] "We review disciplinary proceedings against attorneys, including reinstatement proceedings, de novo on the record. However, when reviewing a petition for reinstatement we will accord due weight to the findings, conclusions, and recommendations of the hearing panel." *Ellis v. Disciplinary Bd.*, 2006 ND 194, ¶ 7, 721 N.W.2d 693 (citations omitted).

[¶ 14] The panel found that when Stensland met with Pierson, the purpose of the meeting was to discuss representation for a divorce. The panel found that before the meeting, Stensland had texted Pierson that the cost for a divorce would be $4500 for everything, with a down payment of $2000. The panel also found Stensland did not write anything down at the meeting, and Pierson gave Stensland a cashier's

check for $2000, made payable to the Stensland Law Firm. It found that neither at that meeting, nor before, did Stensland reveal to Pierson that he was suspended from the practice of law.

[¶ 15] The panel's findings are supported by the evidence. Pierson's testimony shows she was under the impression that Stensland was then a licensed lawyer and was going to represent her. Pierson testified via affidavit that friends or relatives had indicated Stensland was a good lawyer. Pierson also testified in her affidavit:

> Stensland did not tell me he was suspended from the practice of law. He did tell me that he would have an associate sign the paperwork, so the lawyer representing my husband would not know that he was doing the case. Pursuant to Monty J. Stensland's request, I gave him a payment of $2,000, during the meeting at the mall. The check was on the account of my parents. It was made out to the Stensland Law Firm.

The only reasonable inference to be drawn from Pierson's description of the encounter is that Stensland was improperly representing or attempting to represent her. We conclude, as did the panel, that Stensland was engaging or attempting to engage in the practice of law during his suspension.

[¶ 16] Stensland also objects to the panel's finding he made a false claim to this Court in his response to the motion to remand. The panel found he falsely stated in his response that he simply put the cashier's check in a clerical intake folder and subsequently returned the check to Debra Pierson.

[¶ 17] Contrary to Stensland's claim in his response to the motion to remand, he testified at the hearing on remand that he had cashed the check and kept the cash in a desk drawer until he had an opportunity to discuss with Thomas Omdahl whether Omdahl would take the case. In addition, the panel found that on February 14, Stensland gave Pierson a check drawn on his personal account in the amount of $2000 as a refund of the money. The panel found Stensland therefore made a false claim to this Court by claiming he simply put the cashier's check in an intake folder and subsequently returned the cashier's check to Pierson. We conclude, as did the panel, that Stensland made a false statement regarding his dealings with Pierson's check.

[¶ 18] Stensland also objects to the hearing panel's finding that he had no business relationship with the Omdahl and Morgenstern Law Office, arguing the testimony of Clint Morgenstern showed the Omdahl and Morgenstern Office was at the very least engaged in the handling of all of Stensland's open client files.

[¶ 19] Clint Morgenstern, an attorney with that firm, testified:

Q: So then following up on that, you're saying in early February of this year, he might, Tom might have taken on a new case?

A: Yeah, that's entirely possible, yeah. It, it wouldn't have surprised me. And, and often times there would be a name that I was unfamiliar with and Tom'll say: yeah, that's a case that we're handling for Monty or it's an old case we're handling for Monty.

So that's—when, when I first heard the name on there, that's why I called Tom, to say: hey, I heard this name on there, is this something that we're handling or not?

And, and then that, that was the response Mr. Omdahl gave me, the name sort of sounded familiar, but it wasn't a case that he had taken on, so—

[¶ 20] Although Morgenstern's testimony implies he and Omdahl were handling some of Stensland's cases, this testimony does not establish that they were handling all of his cases. Moreover, even if Stensland did have a business relationship with Omdahl & Morgenstern Law, the testimony nevertheless indicates Omdahl had not taken on Pierson's specific case.

 [¶ 21] The panel came to a similar conclusion, finding that in February 2013, Stensland had no business relationship with Omdahl & Morgenstern Law, the law firm never made any payments to Stensland for any purpose, and the $2,000 Pierson gave to Stensland was never received by the law firm of Omdahl & Morgenstern Law. "This Court will accord due weight to the hearing panel's ability to assess the credibility of witnesses." *Ellis v. Disciplinary Board*, 2006 ND 194, ¶ 13, 721 N.W.2d 693. On the basis of the testimony and the panel's assessments after hearing the testimony, we conclude, even if Stensland proved he had a business relationship with the firm, the other evidence establishes that the firm was not handling Pierson's case for him and that he was therefore engaging or attempting to engage in the unauthorized practice of law through his actions related to Pierson.

[¶ 22] Finally, we note that Stensland has cited no authority in support of his claim that the hearing panel must review evidence in the light most favorable to him. Rather, our caselaw establishes that "[w]e review proceedings for reinstatement de novo on the record and accord due weight to the findings, conclusions, and recommendations of the hearing panel as adopted by the Board." *See Hoffman v. Disciplinary Board*, 2005 ND 171, ¶ 5, 704 N.W.2d 810.

### III

[¶ 23] Upon our consideration of the entire record, we conclude Stensland has failed to establish by clear and convincing evidence that he should be reinstated to the practice of law. We adopt the hearing panel's findings of fact and recommendation, deny the petition, and order Stensland pay the costs of the reinstatement proceedings in the amounts of $1773.31 and $3619.32.

[¶ 24] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.