670 N.W.2d 500 (2003)
2003 ND 161
In the Matter of APPLICATION FOR DISCIPLINARY ACTION AGAINST Randall L. HOFFMAN, a Member of the Bar of the State of North Dakota.
Disciplinary Board of The Supreme Court of The State of North Dakota, Petitioner,
v.
Randall L. Hoffman, Respondent.
Nos. 20030141, 20030142.
Supreme Court of North Dakota.
October 23, 2003.
Rehearing Denied November 13, 2003.
*501 Paul W. Jacobson, Disciplinary Counsel, Bismarck, ND, for petitioner.
Randall L. Hoffman, pro se, Elgin, ND, for respondent.
PER CURIAM.
[¶ 1] This is a disciplinary action against Randall L. Hoffman. Hoffman petitioned this Court for review of a hearing panel's report, which found he violated N.D.R. Prof. Conduct 1.12(a), 3.4(d), 4.2, and 4.4. The hearing panel also considered aggravating factors under North Dakota Standards for Imposing Lawyer Sanctions. The hearing panel recommended Hoffman be suspended from the practice of law for one year and pay costs of $4,553.71. We conclude there is clear and convincing evidence Hoffman violated those rules, and we adopt the hearing panel's recommendations.
[¶ 2] Hoffman was admitted to practice law in North Dakota on November 10, 1991. This case involves three allegations of misconduct. The first incident started in February 1998, when Hoffman sat as district judge in a divorce action, Toltzman v. Toltzman. The divorce ultimately ended in a default judgment in favor of Michele Toltzman and Hoffman issued findings of fact, conclusions of law, and an order for judgment. Hoffman resigned as district judge January 7, 1999. His resignation became effective April 30, 1999.
*502 [¶ 3] On February 5, 1999, Bruce Toltzman filed a motion to amend the judgment. On March 1, 1999, Hoffman filed a request for reassignment in the Toltzman case. On September 14, 2001, Hoffman notified Michele he was representing Bruce. On November 9, 2001, Hoffman filed a motion to amend judgment in the Toltzman matter as the attorney for Bruce. Michele did not consent to the representation and was distressed at the knowledge that the judge in the divorce case was now representing her former husband.
[¶ 4] The second incident occurred on October 29, 2000. Hoffman went to the home of Ray Remmick, an individual with whom Hoffman's fiancée, Gwen Simmers, had a visitation dispute. Hoffman informed Remmick he was a lawyer, and he wanted to settle the visitation schedule before he married Simmers the next day. Hoffman produced a document which sought Remmick's consent to the discussion outside of his lawyer's presence. Remmick declined to sign the document or to speak about the visitation schedule without the advice of his lawyer, Joseph Larson. Remmick attempted to contact his attorney by telephone, but the attorney was out of the office. Remmick explained to his lawyer's secretary, Alice Kooker, that Hoffman was at his house and asking him to sign a paper. Kooker explained Remmick's attorney was out of town. Hoffman then spoke with Kooker, stating that Remmick's proposed visitation schedule was "unacceptable." The testimony of both Kooker and Remmick indicate Hoffman became very upset and hostile during the encounter.
[¶ 5] After the telephone conversation with Kooker, Hoffman told Remmick that if he did not sign the document and discuss visitation without his attorney, Remmick would not receive visitation with his child that night. Remmick did not comply with Hoffman's apparent threat, and Remmick was later denied visitation.
[¶ 6] The incident giving rise to the third allegation occurred on December 6, 2000. Hoffman served discovery requests on Remmick in a visitation proceeding concerning the child of Remmick and Simmers. The requests for admissions numbered 112 and interrogatories numbered 58. Several of the questions asked Remmick to disclose facts intimate to his sexual relationship with Simmers, including times and locations of sexual encounters. The trial court sustained objections to all but 23 of the requests for admissions and all but eight of the interrogatories.
[¶ 7] Disciplinary counsel filed a petition for discipline against Hoffman, alleging he violated N.D.R. Prof. Conduct 1.12(a), 3.4(d), 4.2, and 4.4.
[¶ 8] This Court reviews disciplinary proceedings de novo on the record. In re Edwardson, 2002 ND 106, ¶ 9, 647 N.W.2d 126; In re Crary, 2002 ND 9, ¶ 7, 638 N.W.2d 23. Disciplinary counsel bears the burden to prove by clear and convincing evidence the accused attorney violated the rules of conduct. Edwardson, at ¶ 9; In re Swanson, 2002 ND 6, ¶ 6, 638 N.W.2d 240. This Court will give due weight to the findings of the hearing panel, but does not act as a mere "rubber stamp." Edwardson,at ¶ 9. Each case for discipline must be individually considered on its own specific facts. In re Giese, 2003 ND 82, ¶ 7, 662 N.W.2d 250.
[¶ 9] Hoffman made several objections to the hearing panel's report. Hoffman argues the hearing panel made several factual errors and erroneous conclusions of law.

I.
[¶ 10] Hoffman objected that the hearing panel report failed to prove he *503 personally and substantially participated as a judge in the Toltzman matter. Hoffman argues conducting a default divorce proceeding does not constitute personal and substantial involvement for purposes of the rules of conduct. We disagree.
[¶ 11] The applicable rule states:
Except as stated in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator or law clerk to such a person, unless all parties to the proceeding consent after consultation.
N.D.R. Prof. Conduct 1.12(a).
[¶ 12] As a matter of law, presiding as judge in a divorce proceeding, whether by default or trial, constitutes personal and substantial involvement. See Gen. Counsel of the Ala. State Bar, Op. 93-04 (1993) (stating that a former judge may not represent a party on a motion related to a divorce decree the former judge signed even "where the decree was based upon an answer, waiver and agreement and thus required minimal participation from the judge"); see also Cho v. Superior Court, 39 Cal.App.4th 113, 45 Cal.Rptr.2d 863, 863-64 (1995)(disqualifying an attorney's firm from representing a party in an action where the lawyer sat as judge in settlement conferences). Without more, considering and granting a default divorce constitutes personal and substantial involvement. However, in this instance Hoffman did more. The record indicates Hoffman questioned Michele Toltzman and conducted an examination of the record before issuing a ruling.

II.
[¶ 13] Hoffman argues the hearing panel erred in finding Hoffman had an attorney-client relationship with Simmers at the time he communicated with Ray Remmick. In relation to this violation, Hoffman also argues the hearing panel erred when it denied his motion in limine and allowed third parties to testify as to whether Hoffman and Simmers had an attorney-client relationship. Hoffman further argues the hearing panel erred when it denied Hoffman's motion to strike and motion to dismiss. Both motions asserted disciplinary counsel had to prove Hoffman and Simmers had an actual attorney-client relationship. We conclude the hearing panel was correct in its conclusion that Hoffman inappropriately communicated with a represented individual, and he had an apparent attorney-client relationship with Simmers at the time of the communication.
[¶ 14] The hearing panel concluded Hoffman violated N.D.R. Prof. Conduct 4.2 which provides, "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Hoffman argues he did not violate Rule 4.2 because no actual attorney-client relationship existed between himself and Simmers at the time of the prohibited communication. We decline to accept such a narrow interpretation of the rule.
[¶ 15] The presence of an attorney-client relationship is a question of fact and may be implied from the conduct of the parties. See Moen v. Thomas, 2001 ND 110, ¶ 13, 628 N.W.2d 325 (citing Stormon v. Weiss, 65 N.W.2d 475, 520 (N.D. 1954)). No formal agreement is necessary to establish an attorney-client relationship. In re McKechnie, 2003 ND 22, ¶ 19, 656 N.W.2d 661. The hearing panel correctly identified an attorney-client relationship implied from Hoffman's conduct.
*504 [¶ 16] An attorney-client relationship can be presumed in situations where a person has a reasonable belief a lawyer is protecting someone's interest. Restatement (Third) of the Law Governing Lawyers § 14 cmt. a (2000). The Restatement provides, "the various duties of lawyers and clients do not always rise simultaneously." Id. Even if no formal professional relationship exists between the client and the attorney, the attorney may still owe a duty to the prospective client, or third parties. Id.
[¶ 17] Hoffman asserts that the hearing panel must prove three elements derived from agency law in order to establish an attorney-client relationship. Hoffman misunderstands the nature of the violation in reference to the attorney-client relationship. The cases cited by Hoffman examine an attorney-client relationship from the client's perspective, a standard used to determine an attorney-client relationship in malpractice situations. However, this case is distinguishable, because under Rule 4.2, the relationship must be viewed from the perspective of a reasonable third party applying an objective standard. Hoffman's conduct allowed third parties to infer Hoffman was at Remmick's residence to represent Simmers' interests. Under Hoffman's interpretation of Rule 4.2, an attorney could claim to represent a client and make statements on that client's behalf or to their detriment to third parties, but suffer no consequences because the client did not consent to the relationship. Alternatively, an attorney could conduct investigatory interviews with an adversarial party with impunity before his client entered into a formal agreement. This is an absurd interpretation of the rule. Hoffman's communication with Remmick violated both the purpose and the spirit of Rule 4.2, which is to prevent lawyers from taking advantage of laypersons and to "preserve the integrity of the lawyer-client relationship." Annotated Model Rules of Professional Conduct 392 (3d. ed.1996).
[¶ 18] Generally, a lawyer need only claim he is acting on behalf of an individual for third parties to presume the attorney possesses the necessary authority to act on behalf of a client. Charles W. Wolfram, Modern Legal Ethics 150 (1986). "When a lawyer's apparent authority is in question, what reasonably appears calculated to advance the client's objectives must be determined from the third person's viewpoint." Restatement (Third) of the Law Governing Lawyers § 27 cmt c. If an attorney purports to represent an individual to the adverse party, that party is justified in presuming an attorney-client relationship. Hoffman made an appearance before a layperson purporting to represent Simmers' interests. Hoffman implied an attorney-client relationship when he inserted himself into the dispute between Simmers and Remmick and acted with apparent authority. Hoffman's behavior toward Remmick made the clear suggestion that Hoffman was there on behalf of Simmers. Coupled with the announcement that he was an attorney, Hoffman's actions at Remmick's residence on October 29, 2000, amount to legal acts contemplated in the capacity of an attorney-client relationship.
[¶ 19] "A lawyer gains the necessary authority to act in behalf of a client when the client expressly or by implication consents to the representation ... or if the client later ratifies the lawyer's action after the client has knowledge of all material facts." Charles W. Wolfram, Modern Legal Ethics 149 (1986). A third party is entitled to reasonably believe a lawyer acts for a client when the client consents or later ratifies the action taken by the lawyer on behalf of the client. Id. at 149-50. In this case, Simmers ratified the attorney-client relationship and representations made by Hoffman in his discussion with *505 Remmick when she later withheld visitation from Remmick following Hoffman's threat to withhold visitation if Remmick did not sign the consent form. Additionally, Simmers further ratified the attorney-client relationship when Hoffman later filed documents in the visitation proceeding on her behalf.

III.
[¶ 20] Hoffman argues his attempted communication did not rise to the level of that which is prohibited by the rule. This argument is not persuasive. The facts demonstrate that Hoffman asserted the legal position of another when he communicated to Alice Kooker that Remmick's visitation proposal was "unacceptable." Further, Hoffman's contact with Remmick that night could have had serious legal implications for Remmick's visitation case.
[¶ 21] The behavior exhibited by Hoffman is precisely the type the rule seeks to prohibit. This rule prevents attorneys from "exploiting the disparity in legal skills between attorney and lay people." Polycast Technology Corp. v. Uniroyal, Inc., 129 F.R.D. 621, 625 (S.D.N.Y.1990) (citing Papanicolaou v. Chase Manhattan Bank, N.A., 720 F.Supp. 1080, 1084 (S.D.N.Y.1989)). The purpose of Rule 4.2 is also to protect represented persons "against overreaching by adverse counsel, safeguard the client-lawyer relationship from interference by adverse counsel, and reduce the likelihood that clients will disclose privileged or other information that might harm their interests." ABA/BNA Lawyer's Manual on Prof. Conduct 71:302 (1997)(citing ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 396 (1995)).
[¶ 22] Hoffman's communication with Remmick could have potentially compromised Remmick's legal position in the visitation dispute through either an unintentional admission or disclosure of privileged information. The point at which Remmick indicated he would not discuss the matter outside the presence of his attorney, Hoffman should have ended any further discussion with Remmick and waited for consent from Remmick's counsel. Further, even if Remmick had consented, Hoffman would still be in violation of Rule 4.2, because the opposing lawyer's consent is necessary to avoid violating the rule. So long as the representation continues, an adverse client's consent is not sufficient to avoid a rule violation. N.D.R. Prof. Conduct 4.2.
[¶ 23] We conclude Hoffman's communication or attempted communication with Remmick rose to the level of one proscribed by Rule 4.2.

IV.
[¶ 24] The hearing panel concluded Hoffman violated N.D.R. Prof. Conduct 4.4 which provides, "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.
[¶ 25] Hoffman asserts the hearing panel failed to prove his behavior constituted a threat. We disagree. Hoffman attempts to characterize his behavior as a mere messenger between Simmers and Remmick. We find this argument unpersuasive. These facts demonstrate Hoffman leveraged visitation against Remmick in order to compel Remmick's cooperation on October 29, 2000. Hoffman sought to settle the visitation dispute on the night before his wedding to Simmers. Hoffman told Remmick that if Remmick did not sign the document or discuss the matter outside the presence of his attorney, then Remmick would not have visitation with the child that evening. Remmick was subsequently denied visitation. These actions *506 constitute a threat within the meaning of Rule 4.4.
[¶ 26] A violation of Rule 4.4 occurs when an attorney's behavior has no substantial purpose other than to harass or injure another. N.D.R. Prof. Conduct 4.4. Rule 4.4 is not limited to courtroom behavior or behavior committed in the scope of litigation. Annotated Model Rules of Professional Conduct 414 (3d ed.1996). In this case, the hearing panel concluded Hoffman threatened Remmick that he would not have visitation if he did not discuss visitation with him and later Remmick was denied visitation pursuant to Hoffman's threat. We agree with the hearing panel's conclusion.

V.
[¶ 27] Hoffman asserts the hearing panel made inappropriate findings of fact and legal conclusions that his behavior had no purpose other than to burden or harass a third person in discovery. We disagree.
[¶ 28] The use of discovery to intimidate, harass, or burden another is prohibited under N.D.R. Prof. Conduct 3.4(d). Attorney Grievance Comm'n v. Alison, 317 Md. 523, 565 A.2d 660, 668 (1989). In Alison, the court found that the issuance of a subpoena to harass a reporter and prevent him from covering a trial was a violation of the rules. Id. Similarly, abuse of interrogatories and requests for admissions may violate Rule 3.4(d) if they serve no substantial purpose other than to burden or maliciously injure another individual. N.D.R. Prof. Conduct 3.4(d) provides that a lawyer shall not make a frivolous discovery request in pretrial procedure. The prohibition by Rule 3.4(d) against frivolous discovery requests is "akin to the lawyer's duty under Rule 3.1 regarding meritorious claims and contentions." ABA./BNA Lawyer's Manual on Prof. Conduct 61:721 (1997). A claim is frivolous when there is such a complete absence of actual facts or law that a reasonable person could not have expected the court to rule in his favor. Lawrence v. Delkamp, 2003 ND 53, ¶ 13, 658 N.W.2d 758.
[¶ 29] In the visitation dispute between Simmers and Remmick, Hoffman served on Remmick 112 requests for admissions and 58 interrogatories, each with many sub-parts. The district court sustained objections by Remmick's attorney to all but 23 of the requests for admissions and all but eight of the interrogatories. Hoffman's numerous discovery requests probed into the sexual relationship between Simmers and Remmick. Some questions related to times and places of sexual encounters between the two individuals, while others inquired about Remmick's manners and habits during the sexual encounters. These questions did not relate to the dispute over visitation between Simmers and Remmick, nor did they serve any substantial purpose other than to burden or harass Remmick.
[¶ 30] Hoffman asserts his questions relating to Remmick's physical ability to have sexual relations with Simmers were relevant because Remmick was on disability at the time of the encounters. Hoffman claims these requests were relevant to the moral fitness of the parent as outlined in N.D.C.C. § 14-09-06.2. However, this argument is without merit. Remmick unambiguously stated his legal position was not to seek custody of his daughter but, rather, he was seeking a permanent visitation schedule. Hoffman's discovery requests, therefore, were irrelevant because Remmick's moral fitness or ability to provide for the child was not at issue in the case. Hoffman's requests served no other purpose than to burden or harass Remmick *507 and constituted frivolous discovery requests under Rule 3.4(d).

VI.
[¶ 31] Hoffman objected to the hearing panel's consideration of aggravating factors in its recommendation for discipline and costs. Hoffman has previously been disciplined by this Court. Judicial Conduct Comm'n v. Hoffman, 1999 ND 122, 595 N.W.2d 592. Under N.D. Stds. Imposing Lawyer Sanctions 9.22(a), the disciplining authority may consider prior offenses that may justify an increase in the degree of discipline to be imposed.
[¶ 32] The hearing panel also considered aggravating factors showing a pattern of misconduct, multiple offenses, and Hoffman's refusal to acknowledge the wrongful nature of the conduct. N.D. Stds. Imposing Lawyer Sanctions 9.22(c), 9.22(d), 9.22(g). Hoffman admitted to the previous sanction by the Court and no other appropriate responses were made regarding consideration of aggravating factors. Therefore, it was appropriate for the hearing panel to consider such circumstances under the rules.
[¶ 33] We conclude Hoffman violated N.D.R. Prof. Conduct 1.12(a), 3.4(d), 4.2, and 4.4. Considering Hoffman's professional misconduct and the injury caused to the involved parties, we agree with the hearing panel that a one-year suspension is appropriate under the circumstances of this case. We order Randall Hoffman suspended from the practice of law for one year commencing December 1, 2003. Hoffman shall comply with Rule 6.3 of the Rules for Lawyer Discipline. We further order Hoffman to pay costs of $4,553.71 for this proceeding.
[¶ 34] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., concur.