785 N.W.2d 195 (2010)
2010 ND 127
In the Matter of the Application for DISCIPLINARY ACTION AGAINST Gerald A. KUHN, a Member of the Bar of the State of North Dakota.
Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner
v.
Gerald A. Kuhn, Respondent.
No. 20100060.
Supreme Court of North Dakota.
July 7, 2010.
*196 Brent J. Edison, Assistant Disciplinary Counsel, Bismarck, ND, for petitioner.
Michael R. Hoffman, Bismarck, ND, for respondent.
PER CURIAM.
[¶ 1] A hearing panel of the Disciplinary Board recommended attorney Gerald A. Kuhn be suspended from the practice of law for ninety days and pay the costs of the disciplinary proceeding in the amount of $2,654.07 for violating N.D.R. Prof. Conduct 1.7(a), Conflict of Interest, and 1.14, Client With Limited Capacity. Counsel for the Disciplinary Board urges this Court to accept the hearing panel's recommendation. Kuhn objects to the hearing panel's conclusions, arguing they are not supported by clear and convincing evidence. Determining there is clear and *197 convincing evidence Kuhn violated N.D.R. Prof. Conduct 1.14, we direct that Kuhn be suspended from the practice of law for ninety days and that he pay the costs of the disciplinary proceeding in the amount of $2,654.07.

I.
[¶ 2] Kuhn has been licensed to practice law in the courts of North Dakota since July 8, 1974. Shortly after he started his practice, he began to do tax work for Jake Leno. In 2005, Kuhn wrote a will for Jake Leno. In that will, Jake Leno devised his condominium to his daughter, Kathleen McKinley.
[¶ 3] In 2006, McKinley filed a petition for appointment of a guardian/conservator for Jake Leno. The district court appointed Guardian and Protective Services, Inc. ("GAPS") as Jake Leno's temporary guardian/conservator. The district court also appointed a physician, guardian ad litem, and visitor to meet with Jake Leno and report back to the district court.
[¶ 4] The court-appointed physician reported Jake Leno suffered from "Parkinson's disease with concurrent adult onset diabetes" and "some short term memory loss," and indicated Jake Leno needed full-time care. The guardian ad litem reported she "firmly believe[d] that the proposed ward needs a guardian." Jake Leno's former home health care provider informed the guardian ad litem Jake Leno "has Parkinson's disease and dementia of the Alzheimer's type." The court-appointed visitor also recommended Jake Leno needed a guardian/conservator.
[¶ 5] At the hearing on the guardianship/conservatorship petition, Kuhn represented Jake Leno's sons, Ronald Leno and Randy Leno. Ronald Leno and Randy Leno testified they were willing to serve as Jake Leno's guardians/conservators. Jake Leno testified he did not think he needed a guardian/conservator. The district court found Jake Leno "has a current medical diagnosis of Parkinson's disease with adult onset diabetes and exhibits short term memory loss." The district court concluded Jake Leno was incapacitated and appointed GAPS full guardian and conservator, with full control over his place of residence, legal matters, financial matters, and medical treatment.
[¶ 6] In 2007, an unidentified person contacted Kuhn's office and told Kuhn's receptionist Jake Leno wanted his will changed. Kuhn testified at the disciplinary hearing that he thought an employee of GAPS had contacted his office to change the will. However, Kuhn acknowledged he did not contact GAPS to verify whether one of its employees had called his office. Kuhn learned later one of Jake Leno's caregivers had contacted his office. After speaking with Jake Leno, Kuhn drafted a new will that gave all of Jake Leno's property, including the condominium, to the three children equally, instead of devising the condominium solely to McKinley.
[¶ 7] Kuhn testified that at the time he wrote the will he "knew [Jake Leno] had been declared incompetent" and "there was allegations that he had dementia of the Alzheimer's type." Kuhn took two of his employees to Jake Leno's apartment to act as witnesses as Jake Leno executed the new will. Kuhn testified at the disciplinary hearing regarding his state of mind:
I was a little uneasy because he was in under a judicial order that said he was incompetent. So I questioned him, I questioned his caregiver to ask her if he'show he's doing. And she said, "Oh, he's fine. He knows what's going on, and, Jake, he knows." And I questioned him in front of the witnessesin front of the two witnesses about the will. Told him exactly whatwhat he was *198 doing. And said, "Now, are you sure this is what you want to do? This is what's going to happen." And he said, "Yes." So, I mean, my impression that day was that he was fine.
[¶ 8] A year later, McKinley sent a letter to Kuhn protesting his actions regarding Jake Leno's new will. Kuhn, as preparer of the will, subsequently filed a petition seeking an order determining the validity of the will. The district court dismissed the petition, stating, "[T]he guardianship/conservatorship created for the Ward Jake Leno, granted to the appointed guardian/conservator full authority for all legal matters on behalf of Jake Leno, effective as of the date of appointment. The attempted execution of a Will thereafter by the Ward Jake Leno is therefore without legal authority and therefore invalid." Kuhn did not appeal the district court's order.
[¶ 9] In 2009, counsel for the Disciplinary Board filed a petition alleging Kuhn had violated N.D.R. Prof. Conduct 1.2(a), Scope of Representation and Allocation of Authority Between Client and Lawyer; 1.4(a)(2) and (b), Communication; 1.7(a) and (c), Conflict of Interest; and 1.14, Client With Limited Capacity, by his actions regarding Jake Leno's guardianship/conservatorship hearing and second will. The allegations in the Petition for Discipline of misconduct assert a violation of N.D.R. Prof. Conduct 1.7(a) and (c)
which provide that a lawyer shall not represent a client if the lawyer's ability to consider, recommend, or carry out a course of action on behalf of the client will be adversely affected by the lawyer's responsibilities to another client, and a lawyer shall not represent a client if the representation of that client might be adversely affected by the lawyer's responsibilities to another client, in that Kuhn represented Ronald Leno and Randy Leno at the guardianship/conservatorship hearing and thereafter drafted a new will for Jake Leno, purportedly on Jake Leno's behalf, which favored the interests of Ronald Leno and Randy Leno.
The allegations in the Petition for Discipline of misconduct assert a violation of N.D.R. Prof. Conduct 1.14, Comment 5
which provides that if the client has an appointed representative, the lawyer should ordinarily look to the representative for decisions on behalf of the client, in that Kuhn prepared a new will for Jake Leno without having first looked to Guardian & Protective Services, Inc., as the court-appointed guardian and conservator of Jake Leno, for decision-making authority to make a new will.
[¶ 10] The hearing panel found "Kuhn's testimony that he believed that GAPS was aware of Jake Leno's desire to make a new will is not credible." The hearing panel concluded Kuhn had violated N.D.R. Prof. Conduct 1.7(a), Conflict of Interest, because he:
Represented Ronald and Randy, who were seeking appointment as guardians/conservators over Kuhn's long-time client, Jake, and then drafted a new will for Jake, which favored the interests of Ronald and Randy, after Kuhn had represented Ronald and Randy at the guardianship/conservatorship hearing and after Jake had been judicially declared incapacitated.
The hearing panel also concluded Kuhn violated N.D.R. Prof. Conduct 1.14, Client With Limited Capacity, when he "prepared a new will for Jake without communicating with or securing decision-making authority from GAPS, the court-appointed guardian and conservator with full authority over Jake's legal matters." In recommending discipline, the hearing panel considered the following aggravating factors:

*199 Standard 9.22(a), N.D. Stds. Imposing Lawyer Sanctions, a prior disciplinary offense;
Standard 9.22(c), a pattern of misconduct;
Standard 9.22(h), vulnerability of the victim, and
Standard 9.22(I), substantial experience in the practice of law.
The hearing panel considered as a mitigating factor Standard 9.32(e), "full and free disclosure to disciplinary board or cooperative attitude toward proceedings." N.D. Stds. Imposing Lawyer Sanctions 9.32(e). The hearing panel considered suspension the most appropriate sanction under N.D. Stds. Imposing Lawyer Sanctions 4.32 and 8.2 and recommended Kuhn be suspended from the practice of law for ninety days and pay the costs of the disciplinary proceeding in the amount of $2,654.07.
[¶ 11] Kuhn subsequently filed an objection to the hearing panel's report. Kuhn objected to the hearing panel's finding that his testimony was not credible. He also objected to the hearing panel's conclusions that he had violated N.D.R. Prof. Conduct 1.7(a) and 1.14.

II.
[¶ 12] This Court reviews disciplinary proceedings de novo on the record. Disciplinary Board v. Askew, 2010 ND 7, ¶ 8, 776 N.W.2d 816 (citing Disciplinary Board v. Light, 2009 ND 83, ¶ 6, 765 N.W.2d 536). Counsel for the Disciplinary Board must prove each alleged violation by clear and convincing evidence, which means the trier of fact must be reasonably satisfied with the facts the evidence tends to prove and thus be led to a firm belief or conviction. Id. (citing Light, at ¶ 6). "We give due weight to the findings, conclusions, and recommendations of the Disciplinary Board, but we do not act as a mere rubber stamp for the Board." Id. (citing Light, at ¶ 6).

A.
[¶ 13] Rule 1.7(a) of the North Dakota Rules of Professional Conduct states, "A lawyer shall not represent a client if the lawyer's ability to consider, recommend, or carry out a course of action on behalf of the client will be adversely affected by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests." The hearing panel concluded Kuhn violated the rule when he:
Represented Ronald and Randy, who were seeking appointment as guardians/conservators over Kuhn's long-time client, Jake, and then drafted a new will for Jake, which favored the interests of Ronald and Randy, after Kuhn had represented Ronald and Randy at the guardianship/conservatorship hearing and after Jake had been judicially declared incapacitated.
[¶ 14] Kuhn argues the hearing panel's conclusion is not supported by clear and convincing evidence. He asserts no conflict existed because he did not represent Jake Leno at the time of the guardianship/conservatorship hearing, and he did not represent Ronald Leno and Randy Leno at the time Jake Leno made his second will. Counsel for the Disciplinary Board did not allege Kuhn had violated N.D.R. Prof. Conduct 1.9, Duties to Former Client. Rather, counsel for the Disciplinary Board argues clear and convincing evidence shows Kuhn's alternating representation of Jake Leno and his sons created a conflict of interest under N.D.R. Prof. Conduct 1.7(a).
[¶ 15] The record does not include clear and convincing evidence Jake Leno was Kuhn's client at the time of the guardianship/conservatorship hearing. The record indicates Kuhn did tax work for Jake *200 Leno multiple times since 1974 and drafted a will for him in 2005. The record does not explain the course of dealing between Kuhn and Jake Leno; whether Jake Leno hired Kuhn on retainer or whether they entered into a new contract each time Jake Leno requested Kuhn perform a task. Without such an explanation, Jake Leno's status as a current or former client of Kuhn is unclear. See Restatement (Third) of the Law Governing Lawyers § 31(2)(e) (2000) (explaining the relationship between a lawyer and a client "ends as provided by contract or because the lawyer has completed the contemplated services"). The record also does not include an explanation of Jake Leno's understanding of his professional relationship with Kuhn. See Restatement (Third) of the Law Governing Lawyers § 18(2) (2000) (stating a contract between a lawyer and a client should be construed "as a reasonable person in the circumstances of the client would have construed it"). In examining the allegations in the petition for discipline and the findings of the hearing panel we are uncertain as to the client relationships that existed at the times the hearing panel found the violations to have occurred. Rule 1.7(a) prohibits a lawyer from representing a client if it will adversely affect the lawyer's responsibilities to another client. The rule does not prohibit all alternating representation but appears to assume a client relationship at the time of the violation. Without clear and convincing evidence Jake Leno was Kuhn's client at the time of the guardianship/conservatorship hearing, the hearing panel's conclusion that Kuhn violated N.D.R. Prof. Conduct 1.7(a), Conflict of Interest, is not supported by the record.

B.
[¶ 16] Rule 1.14 of the North Dakota Rules of Professional Conduct states, in pertinent part:
(a) When a client's capacity to make adequately considered decisions in connection with a representation is limited, whether because of minority, mental impairment, or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.
(b) When the lawyer reasonably believes that the client has limited capacity, is at risk of substantial physical, financial, or other harm unless action is taken, and the client cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian ad litem, conservator, or guardian.
Comment 5 of the rule states, "If the client has an appointed representative, the lawyer should ordinarily look to the representative for decisions on behalf of the client. The lawyer should be cognizant of the extent of the powers and duties conferred upon the client's appointed representative." N.D.R. Prof. Conduct 1.14, comment 5. The hearing panel concluded Kuhn violated Rule 1.14 when he "prepared a new will for Jake without communicating with or securing decision-making authority from GAPS, the court-appointed guardian and conservator with full authority over Jake's legal matters."
[¶ 17] Kuhn argues he did not violate Rule 1.14 because he was abiding by his client's wishes. Kuhn cites Comment 3 of Rule 1.14:
The fact that a client is a minor or has limited capacity does not diminish the lawyer's obligation to treat the client with attention and respect. Even if the person has an appointed representative, the lawyer should as far as possible *201 accord the represented person the status of client, particularly in maintaining communication. Appointed representatives include guardians ad litem, conservators, guardians, individuals appointed in a durable power of attorney or in an advanced health care directive.
Kuhn argues he was fulfilling his duty to give Jake Leno attention and respect when he drafted the new will.
[¶ 18] Kuhn concedes he had a responsibility to communicate with Jake Leno's guardian/conservator, but Kuhn testified he believed he was acting with the consent of GAPS. The hearing panel found this testimony was not credible. "[W]e defer to the hearing panel's findings on the credibility of a witness, because the hearing panel has the opportunity to observe the witness's demeanor and hear the witness testify." Askew, 2010 ND 7, ¶ 9, 776 N.W.2d 816 (citing Disciplinary Board v. Johnson, 2007 ND 203, ¶ 22, 743 N.W.2d 117).
[¶ 19] Counsel for the Disciplinary Board cites North Dakota Ethics Opinion No. 09-03. In that opinion, the requesting attorney represented a criminal defendant who had been declared incapacitated and had a guardian with full authority over legal matters. N.D. Ethics Opinion 09-03 at 1. The requesting attorney asked the ethics committee of the State Bar Association of North Dakota whether he was obligated to communicate with the guardian against his client's wishes, and whether he was obligated to communicate with the guardian regarding entry of pleas, waiver of jury trial, or whether his client would testify. Id. The ethics committee cited favorably the Massachusetts Supreme Court's opinion in Guardianship of Hocker, 439 Mass. 709, 791 N.E.2d 302 (2003). Id. at 5-6. The Massachusetts Supreme Court stated:
When a person is adjudicated incompetent. . . the necessary effect . . . is that the ward is in law . . . incapable of taking care of himself, as to all the world. The permanent guardian stands in the place of the ward in making decisions about the ward's well-being, and the guardian is held to high standards of fidelity in exercising this authority for the ward's benefit. To be sure, an adjudication of incompetency . . . does not obviate the need for a guardian or judge to consult a ward's feelings or opinions on a matter concerning his care. It does not make the ward any less worthy of dignity or respect in the eyes of the law than a competent person. It does not deprive the ward of fundamental liberty interests. But the rights and interests of one adjudicated to be incompetent must of necessity and for the benefit or advantage of the ward, often be vindicated in a manner different from that of the mentally competent.
Id. (quoting Hocker, 791 N.E.2d at 307) (internal quotes and citations omitted). The ethics committee concluded the requesting attorney was ethically obligated to communicate with his client's guardian, but that it was a legal question beyond the committee's purview whether the guardian or the client had the authority to make decisions regarding a plea, waiver of jury trial, or whether the client would testify. Id. at 8.
[¶ 20] The record shows Kuhn knew Jake Leno had been declared incapacitated and GAPS had been named his guardian with full authority over his legal matters. Kuhn was present at the guardianship hearing. He reviewed all the documents indicating Jake Leno suffered from Parkinson's disease and short-term memory loss. He concedes it was his responsibility to communicate with Jake Leno's guardian. He failed to meet this *202 responsibility, however. Kuhn's understandable desire to give his client attention and respect does not overcome Jake Leno's incapacity to make legal decisions on his own behalf. Kuhn did not look to Jake Leno's appointed representative, as required by N.D.R. Prof. Conduct 1.14, comment 5. Kuhn persisted in executing a will that was invalid because of Jake Leno's incapacity. Furthermore, we do not ignore the fact the second will drafted by Kuhn benefitted Ronald Leno and Randy Leno, Kuhn's clients at the guardianship/conservatorship hearing. Clear and convincing evidence indicates Kuhn violated N.D.R. Prof. Conduct 1.14.

C.
[¶ 21] The hearing panel considered suspension to be the appropriate sanction under Standard 4.32 of the North Dakota Standards for Imposing Lawyer Sanctions. Standard 4.32 states, "Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." In light of our determination that clear and convincing evidence does not exist to prove Kuhn violated N.D.R. Prof. Conduct 1.7, the proper sanction is more appropriately considered under Standards 6.22 and 8.2.
[¶ 22] Standard 6.22 states, "Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding." The Standards define "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." The record indicates Kuhn was present at the guardianship/conservatorship hearing, heard all the testimony, and reviewed all the exhibits. He knew GAPS had been declared Jake Leno's full guardian/conservator with authority over legal matters. Despite this knowledge, Kuhn drafted a will for Jake Leno without receiving permission or authorization from GAPS, thus violating the order establishing GAPS as Jake Leno's guardian/conservator. Suspension is the appropriate sanction under Standard 6.22.
[¶ 23] The hearing panel determined suspension to be an appropriate sanction under Standard 8.2, which states, "Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession." Kuhn has previously consented to discipline. In 2002, Kuhn served as guardian ad litem for a ward. The hearing panel concluded Kuhn violated N.D.R. Prof. Conduct 1.4(b), Communication, when he failed to advise parties to a real estate transaction that the ward had a guardian ad litem and evidence indicated he was incapacitated. The Board also found Kuhn violated N.D.R. Prof. Conduct 1.7(a) and (c), Conflict of Interest, when he provided legal advice to the parties with regard to the real estate transaction. Kuhn consented to a reprimand from the hearing panel for his violations. Under Standard 8.2, suspension is the appropriate sanction.

III.
[¶ 24] On the basis of the record, we reject the hearing panel's finding that Kuhn violated N.D.R. Prof.Conduct 1.7(a), Conflict of Interest, and accept the hearing panel's finding that Kuhn clearly and convincingly violated N.D.R. Prof. Conduct 1.14, Client With Limited Capacity. We *203 order Kuhn be suspended from the practice of law for ninety days, effective August 1, 2010, and that he pay the costs of the disciplinary proceeding in the amount of $2,654.07.
GERALD W. VANDE WALLE, C.J., and WICKHAM CORWIN, D.J., concur.
[¶ 26] The Honorable WICKHAM CORWIN, D.J., sitting in place of MARING, J., disqualified.
CROTHERS, Justice, concurring specially.
[¶ 27] I agree with the Court's analysis of Rule 1.14, North Dakota Rules of Professional Conduct and with the discipline imposed.
[¶ 28] I respectfully disagree with the Court's analysis of the alleged Rule 1.7(a) violation, which I believe is overly narrow. At the same time, I cannot join Justice Kapsner's Rule 1.7(a) analysis because I do not agree her basis for discipline was the violation alleged in the Petition for Discipline and was not the violation which appears to have been tried to the Hearing Panel of the Disciplinary Board. I believe that, before discipline could be entered on the basis suggested by Justice Kapsner, due process would require remand for adequate notice to Kuhn and for his opportunity to respond. Even then, we would be wise to proceed cautiously out of concern that the offered resolution would place small town lawyers in peril due to the traditional nature of their practice handling small transactions for an array of clients.
[¶ 29] Therefore, I concur with the result reached by the Court.
[¶ 30] DANIEL J. CROTHERS
KAPSNER, Justice, concurring and dissenting.
[¶ 31] I concur in the majority's analysis of N.D.R.Prof. Conduct 1.14 and in the discipline imposed.
[¶ 32] I respectfully dissent from the majority's analysis of Rule 1.7(a), N.D.R.Prof. Conduct. On that issue, I would accept the findings and conclusions of the hearing panel and hold that a violation has occurred. The hearing panel concluded a violation occurred because Kuhn:
Represented Ronald and Randy, who were seeking appointment as guardians/conservators over Kuhn's long-time client, Jake, and then drafted a new will for Jake, which favored the interests of Ronald and Randy, after Kuhn had represented Ronald and Randy at the guardianship/conservatorship hearing and after Jake had been judicially declared incapacitated.
Because the record does not establish Jake Leno's understanding of his relationship to Kuhn, I do not understand the hearing panel's conclusion to establish a violation of Rule 1.7(a) solely by virtue of Kuhn's representation of Ronald Leno and Randy Leno at the guardianship/conservatorship hearing. Rather, it is by the subsequent acts of Kuhn in drafting and assisting in the execution of a will by Jake Leno that advances the interests of Ronald Leno and Randy Leno at a time when Kuhn has not taken the appropriate measures to determine that such advancement is the intent of Jake Leno.
[¶ 33] Rule 1.7(a), N.D.R. Prof. Conduct, provides that "[a] lawyer shall not represent a client if the lawyer's ability to consider, recommend, or carry out a course of action on behalf of the client will be adversely affected by the lawyer's responsibilities to another client or to a third person. . . ." The violation is premised on the findings of the hearing panel that *204 Kuhn had drafted a prior will for Jake Leno in 2005. However, as the hearing panel found, "[t]he new will was more favorable to Ronald and Randy, whom Kuhn had represented at the guardianship/conservatorship hearing, and less favorable to Kathleen, than Jake's prior will."
[¶ 34] For purposes of the new will, Kuhn's obligations of loyalty were solely to Jake Leno, yet Kuhn acted in violation of a guardianship order of which he was fully aware. He took no appropriate measures to engage the guardian to assure that Jake Leno had formed a new intent to advance the interests of Randy Leno and Ronald Leno, with whom Kuhn had recently had an attorney-client relationship adverse to the express wishes of Jake Leno. Kuhn represented the sons seeking to have them appointed as guardian as against the position of Jake Leno who did not want a guardian appointed. The benefit to Randy Leno and Ronald Leno in the new will is contrary to the express provisions of Jake Leno's 2005 will.
[¶ 35] The hearing panel found: "Kuhn neither consulted with nor obtained authority from GAPS before drafting a new will and presenting the same to Jake. Kuhn's testimony that he believed that GAPS was aware of Jake Leno's desire to make a new will is not credible." Not only did the hearing panel find Kuhn not to be credible in believing GAPS was aware that Jake Leno desired to write a new will, but Kuhn was aware that GAPS, as Jake Leno's legal guardian, would have to be involved in the creation of a new will, if Jake Leno had testamentary capacity. N.D.C.C. § 14-01-03.
[¶ 36] Under these circumstances, where the effect of Kuhn's conduct is to advance the interests of former clients recently adverse to Jake Leno, whose interests in the creation of a new will demand Kuhn's sole loyalty, and where Kuhn has taken no appropriate steps to determine Jake Leno's intent with respect to those formerly adverse clients, clear and convincing evidence indicates Kuhn violated N.D.R. Prof. Conduct 1.7(a).
[¶ 37] DALE V. SANDSTROM, J. concurs.