2010 ND 187

**In the Matter of the Application for DISCIPLINARY ACTION AGAINST A. William LUCAS, a Member of the Bar of the State of North Dakota.**

**Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner**

v.

**A. William Lucas, Respondent.**

**No. 20100104.**

Supreme Court of North Dakota.

Sept. 29, 2010.

Brent J. Edison, Assistant Disciplinary Counsel, Bismarck, ND, for petitioner.

A. William Lucas, self-represented, Bismarck, ND, respondent.

PER CURIAM.

[¶ 1] A hearing panel of the Disciplinary Board recommends Attorney A. William Lucas be publicly reprimanded and pay the costs of the disciplinary proceeding in the amount of $2,240.92 for violating N.D.R. Prof. Conduct 4.2, communicating with a represented party. Counsel for the Disciplinary Board objects to the hearing panel's recommended sanction. Lucas contends the evidence does not support a conclusion that he violated N.D.R. Prof. Conduct 4.2. Clear and convincing evidence establishes Lucas violated N.D.R. Prof. Conduct 4.2, and we direct Lucas be suspended from the practice of law for 30 days and he pay the costs of the disciplinary proceeding in the amount of $2,240.92.

I

[¶ 2] A. William Lucas was admitted to practice law in North Dakota in 1963. The Disciplinary Board filed a petition for discipline in April 2009, asserting Lucas violated N.D.R. Prof. Conduct 4.2 by sending letters regarding pending litigation to his Condominium Association's board and to individual members of the Association's board while the Association was represented by counsel. Lucas answered the petition for discipline, denying his letters violated Rule 4.2. A hearing was held on December 8, 2009, and the hearing panel made its findings, conclusions and recommendation on March 31, 2010. The hearing panel concluded Lucas violated Rule 4.2 and recommended he be publicly reprimanded.

[¶ 3] Lucas has been a party in two litigated cases against the Association, *Riverside Park Condos. Unit Owners Ass'n v. Lucas*, 2005 ND 26, 691 N.W.2d 862 and *Lucas v. Riverside Park Condos. Unit Owners Ass'n*, 2009 ND 217, 776 N.W.2d 801. In both cases, the Association was represented by counsel and Lucas represented himself. While the second case was pending, Lucas sent two letters to the Condominium Association's board, one letter to a board member and one letter to an officer.

[¶ 4] The first letter, dated August 21, 2008, was directed to the Association's board criticizing the board's lawyer's performance, questioning the lawyer's motives and suggesting the board consider alternative dispute resolution. Included with the letter was a pamphlet from the State Bar Association of North Dakota about alternative dispute resolution. The second and third letters were addressed to Association president Jack Huseby, and to board member Kristi Preszler. Those letters, dated

August 25, 2008, sought information about an interrogatory answer stating Lucas' dog bit Preszler's son. The fourth letter, dated December 9, 2008, was addressed to the Association's board. It discussed various communications Lucas sent to the board and expressed his desire to settle the case. The letter concluded:

"It appears to me that this Board is not informed and does not know the malicious and vindictive actions being taken by the designated agents of the Board and I don't believe that the owners and association know that the Board has delegated their responsibilities to non-board agents.

"If we can't resolve our differences soon I will correspond with our owners to advise them of the actions taken by our Board which are contrary to their best interests and I will start two or three new lawsuits."

[¶ 5] Prior to this disciplinary proceeding, three complaints were filed based on similar conduct. Two of the complaints were dismissed. On the third complaint, the hearing panel issued Lucas a public reprimand and ordered he pay costs of the disciplinary proceedings based on violations of N.D.R. Prof. Conduct 1.6 (Confidentiality of Information), N.D.R. Prof. Conduct 1.10 (Imputed Disqualification: General Rule), N.D.R. Prof. Conduct 1.9 (Conflict of Interest: Former Client), and N.D.R. Prof. Conduct 4.2 (Communication With Person Represented by Counsel). The hearing panel found by clear and convincing evidence "that Mr. Lucas violated Rule 4.2 ... by communicating with members of the Association about the ongoing litigation knowing that the Association and its members were represented by counsel." This Court denied Lucas' petition for review of the hearing panel's decision.

## II

[¶ 6] "This Court reviews disciplinary proceedings de novo on the record." *Disciplinary Bd. v. Kuhn*, 2010 ND 127, ¶ 12, 785 N.W.2d 195. "Disciplinary counsel must prove each alleged violation by clear and convincing evidence, which means the trier of fact must be reasonably satisfied with the facts the evidence tends to prove and thus be led to a firm belief or conviction." *Disciplinary Bd. v. Askew*, 2010 ND 7, ¶ 8, 776 N.W.2d 816. "We give due weight to the findings, conclusions, and recommendations of the Disciplinary Board, but we do not act as a mere rubber stamp for the Board." *Id.* "Each disciplinary matter must be considered on its own facts to decide which sanction, if any, is appropriate." *Disciplinary Bd. v. Buresh*, 2007 ND 8, ¶ 6, 726 N.W.2d 210.

## III

[¶ 7] Rule 4.2 of the North Dakota Rules of Professional Conduct states, "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." The rule does not specify whether it applies to attorneys representing themselves.

[¶ 8] Here, the Condominium Association is represented by counsel. "In the case of a represented organization, [Rule 4.2] prohibits communications with a constituent of the organization ... who has authority to obligate the organization with respect to the matter." N.D.R. Prof. Conduct 4.2 cmt. 6. The Association's officers and board members are within the scope of comment 6 because they have the authority to act on the issues in litigation. *See* N.D.C.C. § 47–04.1–07(4) (owners required to record list of persons authorized

to act for owners). Lucas mailed letters to the board, to the board's president and to a member of the board. These communications were sent to people who are included under the scope of Rule 4.2.

[¶ 9] Lucas argues he did not violate Rule 4.2 because the rule does not apply when an attorney is representing himself. His view is too narrow. The rule protects "a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the lawyer-client relationship, and the uncounseled disclosure of information relating to the representation." N.D.R. Prof. Conduct 4.2 cmt. 1. Most courts have held Rule 4.2 applies to attorneys representing themselves because it is consistent with the purpose of the rule. *See In re Schaefer*, 117 Nev. 496, 25 P.3d 191, 199 (2001) ("The lawyer still has an advantage over the average layperson, and the integrity of the relationship between the represented person and counsel is not entitled to less protection merely because the lawyer is appearing pro se."); *In re Segall*, 117 Ill.2d 1, 109 Ill.Dec. 149, 509 N.E.2d 988, 990 (1987) ("A party, having employed counsel to act as an intermediary between himself and opposing counsel, does not lose the protection of the rule merely because opposing counsel is also a party to the litigation."). In addition, we have recognized Rule 4.2 "is to prevent lawyers from taking advantage of laypersons." *Disciplinary Bd. v. Hoffman*, 2003 ND 161, ¶ 17, 670 N.W.2d 500.

[¶ 10] Lucas relies on a Connecticut Supreme Court decision to argue Rule 4.2 does not apply when he is representing himself because he is not representing a client. In *Pinsky v. Statewide Grievance Committee*, the court held an attorney representing himself had a right to communicate with a represented party because he was not representing a client. 216 Conn. 228, 578 A.2d 1075, 1079 (1990). Most courts have rejected *Pinsky*, reasoning "the policies underlying [Rule 4.2] are better served by extending the restriction to lawyers acting pro se." *In re Haley*, 156 Wash.2d 324, 126 P.3d 1262, 1267 (2006) (discussing prior authority); *see also Runsvold v. Idaho State Bar*, 129 Idaho 419, 925 P.2d 1118, 1120 (1996) ("We thus construe the phrase of Rule 4.2, 'in representing a client' to include the situation in which an attorney is acting *pro se* because this interpretation better effectuates the purpose of Rule 4.2."). We join the majority of courts in rejecting the rationale of the court in *Pinsky*.

[¶ 11] We conclude that the reasoning of courts in *In re Haley* and *Runsvold* is more persuasive than *Pinsky* and that the majority position is more in line with our precedent and with our prior application of Rule 4.2 in the prior Lucas case. We therefore adopt the hearing panel's conclusion that Rule 4.2 applies to attorneys representing themselves.

■ [¶ 12] Lucas argues his letters do not fall under the purpose and reason for Rule 4.2. We disagree. Lucas sent letters to the Association's board, to an officer and to a board member while the Association was represented by counsel. These letters suggested settlement and discussed other matters related to the litigation. Examples from the letters include:

"I am not aware of any reason why this litigation could not be settled. I discussed this very briefly with President Huesby and he flat out said this matter could not be settled. The question has to be, who is controlling this litigation? And who, for whatever reason is taking the position of no possible settlement?"

"Attorney Rogneby obviously does not want this matter settled. He has what

we call a 'cash cow' where he can devote unlimited hours of law work to this case and get paid. If Mr. Rogneby has his way this litigation will go on until I am gone from this Earth. Mr. Rogneby also wants to continue to litigate this to punish me for 'the group' "!

"When I moved into my condominium in December of 1999, this was a military compound under the command of my next-door 'neighbor from hell', Thomas Prishmann, and Allan Rogneby. It was 'their way or the highway.' It has been suggested to me that had it not been that I moved in next-door to Thomas Prishmann, there would have been no pet restriction litigation dispute with me. Thomas Prishmann and Allan Rogneby have moved away. We have a new Board of Directors and new Officers. This Board should not be continuing a fight and dispute brought for malicious vindictive purposes by Thomas Prishmann and Allan Rogneby, with the assistance of attorney Rogneby."

"If the Board continues to encourage and permit Mr. Workmann and attorney Rogneby to maliciously, vindictively and cruelly litigate and harass me I will have to shift to the same tactics and practices. There are many lawsuits I could bring, and there are internet sites and books on how to be a 'bad neighbor.' I may have to replace Tom as the 'neighbor from hell.' "

"There is no rational reason for this litigation other than for the malicious vindictive purposes of Mr. Workmann and his 'group' and Attorney Rogneby."

"I again ask that we attempt to settle this matter without the malicious, vindictive, litigation now under way."

"As I have indicated many times to the Board, I cannot think of any rational reason for this litigation or why we can't settle this matter. I would appreciate your efforts to facilitate a settlement of this matter."

"I am going to try one more time to communicate with you in an attempt to settle whatever differences we have."

"It is not my type of practice to litigate without being reasonable and civil. Parties can litigate legal issues without the personal malicious vindictive attacks of Attorney Rogneby."

"Please discuss this matter and let me know if I can meet with someone representing the board to explore settlement."

"If we can't resolve our differences soon I will correspond with our owners to advise them of the actions taken by our Board which are contrary to their best interests and I will start two or three new lawsuits."

These letters present the exact situation Rule 4.2 is meant to prevent.

[¶ 13] Lucas argues Rule 4.2 does not apply to communications about matters outside the representation and he had an independent justification for the communication. Extensive quotations in the prior paragraph show all of Lucas' letters addressed issues involved in the representation. These arguments are without merit.

[¶ 14] We conclude clear and convincing evidence establishes Lucas violated N.D.R. Prof. Conduct 4.2 based on the content of Lucas' four letters to the Association's board, board member and officer.

## IV

[¶ 15] Both parties challenge the hearing panel's recommended sanction of public reprimand. Lucas argues the petition should be dismissed and no sanction should be imposed. Disciplinary Counsel argues suspension is the appropriate sanction because Lucas has been reprimanded for the same misconduct, because Lucas'

actions were intentional and because Lucas' actions were a significant injury to the public, the legal system and the profession.

[¶ 16] Lucas asserts he should not be sanctioned because he wrote the letters while relying on the prior dismissals of disciplinary complaints against him and on *Pinsky*, 216 Conn. 228, 578 A.2d 1075. Lucas' reliance on the dismissal of the disciplinary complaints is misplaced because he had been disciplined for the same conduct after the dismissals. Lucas' asserted reliance on *Pinsky* is not persuasive because at the time Lucas wrote his letters, several jurisdictions had rejected the conclusion reached in *Pinsky*. *See In re Haley*, 156 Wash.2d 324, 126 P.3d 1262; *In re Schaefer*, 117 Nev. 496, 25 P.3d 191; *Runsvold*, 129 Idaho 419, 925 P.2d 1118; *Sandstrom v. Sandstrom*, 880 P.2d 103 (Wyo.1994); *In re Segall*, 117 Ill.2d 1, 109 Ill.Dec. 149, 509 N.E.2d 988; *see also* D.C. Ethics Op. 258 (1995). These rejections of the Rule 4.2 application found in *Pinsky*, coupled with Lucas' prior discipline for similar conduct, reasonably informed Lucas that Rule 4.2 prohibited his communication with the board, the board member and the Association officer about the litigation.

[¶ 17] The hearing panel recommended a public reprimand after considering mitigating factors under N.D. Stds. Imposing Lawyer Sanctions 9.32(b), absence of dishonest or selfish motive; 9.32(c), personal and emotional problems; and 9.32(e), full and free disclosure to disciplinary board or cooperative attitude toward the proceedings. The hearing panel considered sanctions from disbarment to reprimand under N.D. Stds. Imposing Lawyer Sanctions 8.0 and concluded public reprimand was the most appropriate sanction because Lucas' conduct is annoying but not a significant injury or potential injury to the public, legal system or the profession and because

Lucas' conduct is more negligent than intentional.

[¶ 18] We conclude public reprimand is not a sufficient sanction for the behavior in this case. Standard 8.2, N.D. Stds. Imposing Lawyer Sanctions, provides, "Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession." Lucas was reprimanded previously for similar conduct. That sanction failed to deter Lucas from repeating the conduct. "This [C]ourt's disciplinary orders are not intended to be 'empty noise.'" *Disciplinary Bd. v. Larson*, 512 N.W.2d 454, 455 (N.D.1994). Lucas' communications with the Association, a represented party, goes to the core of our professional values regarding an attorney-client relationship. As such, suspension from the practice of law for 30 days is the appropriate sanction.

V

[¶ 19] We conclude Lucas violated N.D.R. Prof. Conduct 4.2. We order that Lucas be suspended from the practice of law for 30 days and that he pay $2,240.92 in costs for the disciplinary proceedings.

[¶ 20] DANIEL J. CROTHERS, DALE V. SANDSTROM, JJ., and BRUCE E. BOHLMAN, S.J., concur.

[¶ 21] The Honorable BRUCE E. BOHLMAN, S.J., and the Honorable BENNY A. GRAFF, S.J., sitting in place of KAPSNER, J., and MARING, J., disqualified.

VANDE WALLE, Chief Justice, concurring and dissenting.

[¶ 22] I would adopt the Disciplinary Board's entire recommendation. Because

the majority does not adopt the Disciplinary Board's recommended sanction I dissent to that portion of the majority opinion.

[¶ 23] Lucas relied upon the decision in *Pinsky v. Statewide Grievance Committee*, 216 Conn. 228, 578 A.2d 1075 (1990), construing a provision of that State's rules of professional conduct comparable to N.D.R. Prof. Conduct 4.2, to justify his actions in contacting the Condominium Board. I agree with the majority opinion that the reasoning of the other courts which have considered this matter are more persuasive than *Pinsky* and that we should reject the *Pinsky* rationale. Nevertheless, at the time Lucas contacted the Board, there was a split of authority on an issue on which this Court has not yet spoken. Ordinarily, in applying the Rules of Professional Conduct, I do not believe that a lawyer should be disciplined for relying on a minority position that this Court subsequently rejects.

[¶ 24] Although Lucas had been reprimanded previously for similar action, Lucas petitioned this Court to review the hearing panel's decision. We denied the petition and did so by order and without explanation. This Court does not grant leave to appeal an informal decision "unless the person seeking leave to appeal shows that the board acted arbitrarily, capriciously, or unreasonably." N.D.R. Lawyer Discipl. 3.1(D)(8). Nevertheless, it is only now, in the majority opinion, that "We join the majority of courts in rejecting the rationale of the court in *Pinsky* " and "We conclude that the reasoning of courts in *In re Haley* and *Runsvold* is more persuasive than *Pinsky* and that the majority position is more in line with our precedent and with our prior application of Rule 4.2 in the prior Lucas case."

[¶ 25] Perhaps Lucas should have been able to glean the fact we disagreed with his interpretation of Rule 4.2 from our order denying his petition to appeal the public reprimand. However, that public reprimand concerned Rules of Professional Conduct in addition to Rule 4.2. I believe that Lucas's failure to grasp the significance of the order denying his petition to appeal is why the hearing panel in this instance found Lucas's action was more negligent than intentional. For that reason, as well as the other reasons cited by the hearing panel, I would impose a public reprimand rather than suspension.

[¶ 26] BENNY A. GRAFF, S.J., concur.